ANTOINETTE PASCUCCI, PLAINTIFF-APPELLANT, v. MARGARET VAGOTT, DIRECTOR OF WELFARE OF TRENTON, THE DEPARTMENT OF WELFARE OF TRENTON AND THE CITY OF TRENTON, DEFENDANTS-RESPONDENTS AND ANTOINETTE PASCUCCI, PLAINTIFF-APPELLANT, v. DEPARTMENT OF INSTITUTIONS AND AGENCIES, ANN KLEIN, COMMISSIONER; DIVISION OF PUBLIC WELFARE, G. THOMAS RITI, DIRECTOR, DEFENDANTS-RESPONDENTS.

LYDIA LADYKA AND ANNA MAE GRAY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, AND STANLEY C. VAN NESS, PUBLIC ADVOCATE, PLAINTIFF-APPELLANTS, v. DEPARTMENT OF INSTITUTIONS AND AGENCIES, ANN KLEIN, COMMISSIONER; DIVISION OF PUBLIC WELFARE, G. THOMAS RITI, DIRECTOR, DEFENDANTS-RESPONDENTS.

Argued November 17, 1975—Decided June 25, 1976.

42

*Mr. Dennis S. Brotman* argued the cause for appellant Pascucci (*Ms. Alice Ashley Costello,* Director, Legal Aid Society of Mercer County, attorney; *Mr. Brolman, Mr. Robert A. Obler* and *Ms. Jane B. Terpstra* of counsel and on the brief).

*Mr. Robert P. Corman,* Assistant Deputy Public Advocate, argued the cause for appellants Ladyka, Gray and Van Ness (*Mr. Stanley C. Van Ness,* Public Advocate, attorney; *Mr. Corman* and *Mr. Michael C. Parks* on the brief).

*Mr. Raymond J. Lesniak,* Interim Director, argued the cause for *amicus curiae* State Office of Legal Services.

*Mr. Stephen Skillman,* Assistant Attorney General, argued the cause for respondents Department of Institutions and Agencies, *et al.* (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Skillman* of counsel; *Mr. Guy S. Michael,* Deputy Attorney General, on the brief).

*Mr. Raymond B. Demski* argued the cause for respondents Vagott, *et al.* (*Mr. George T. Dougherty,* attorney).

The opinion of the Court was delivered by

HUGHES, C. J. These appeals (certified here while pending unheard in the Appellate Division, 68 *N. J.* 176 (1975)) challenge the validity of a regulation of the Division of Public Welfare, New Jersey Department of Institutions and Agencies, setting lower levels of financial assistance to persons classified as "employable" than to those classified as "unemployable." The primary issue is whether that classification is arbitrary and unreasonable on its face or as applied; related to this question is the collateral issue of whether the classification violates the Equal Protection clause or is contrary to the policy and purpose of the controlling statute.

There are subsidiary questions such as whether the relief afforded employables is sufficient to meet their basic needs for survival; whether a municipal director of welfare has the authority or duty to extend "general assistance" in an amount exceeding that prescribed by valid state regulation, and whether initial jurisdiction to consider the questions presented belonged in the Juvenile and Domestic Relations Court or in the Appellate Division.

The intervention of the Public Advocate and other legal services groups directs our attention not only to the rights of the individual appellants but to those of other recipients of public assistance ("welfare") similarly situated.

In light of our finding that the challenged regulation is incompatible with the legislative policy and standard of the statute, we need to address only the additional jurisdictional question.

## I.

The individual appellants are welfare recipients. Pursuant to a regulation of the Division of Public Welfare, General Assistance Manual § 2.300A (III) (4) (hereafter the "regulation"), a maximum allowance of $178 per month is provided to adults who "because of physical, mental or emotional handicaps are unable to accept employment." This class is designated as unemployable. As to adults who are employable, however, Schedule II of the regulation limits the monthly allowance to $119. The regulation was promulgated on September 1, 1971, by the Commissioner of Institutions and Agencies (hereafter "Commissioner") pursuant to the General Public Assistance Law, N. J. S. A. 44:8–107 et seq. The individual appellants are classified as employables and hence are only entitled to the lower monthly allowance.

General assistance, which is sometimes referred to as "municipal welfare," is a state-supervised, municipally administered public assistance program available to needy persons not otherwise provided for under state laws, that is to say persons not qualifying for "categorical" welfare aid such as

old age assistance, aid to the blind, disability assistance, aid to families with dependent children or aid to families of the working poor.

General assistance is considered a "residual" or last resort program under which aid is given to needy single persons and married couples between 18 and 65 years of age who have no minor children. Under the statute cited, the State regulates the program for approximately 400 municipalities which accept state financial assistance.

Before 1971 general assistance grants were based on the extent of need as calculated for individual cases. A budget was prepared to correlate an applicant's actual costs, for shelter, clothing, personal and household needs and scheduled sums for food, to his income and resources. *N. J. A. C.* 10: 85–2.1 *et seq.* In 1971, however, all state welfare programs including categorical assistance and general assistance eliminated such individualized computations and instituted a "flat grant" system. It was then that the employable-unemployable classification was introduced as part of the general assistance scheme. The history of the regulation is essentially silent on the basis for the distinction, and no public hearings were held before its promulgation.

As of 1974 there were approximately 16,495 general assistance recipients in the state and of these an estimated 5,000 to 8,000 were employables.

Neither classification of welfare aid is extended to persons able to work who refuse to accept employment when it is available. All able recipients must continuously seek work or face loss of aid. *See N. J. S. A.* 44:1–94, 44:8–118. The individual appellants herein have complied with this requirement and thus these cases do not involve persons unwilling to work, but on the contrary persons who are anxious to work but unable to find jobs.

## II.

The appellants set their cases in the context of the present economic climate including not only the high state unem-

ployment figures and the widespread unavailability of work, but inflationary increases in the cost of food, housing, transportation and health needs. They contend that the present state of the economy renders the distinctions between employables and unemployables especially onerous and oppressive. On the other hand, the Department of Institutions and Agencies and the City of Trenton through its Department of Welfare point to the finite nature of welfare resources and the potential economic strain of providing all general assistance recipients with equal benefits.

The predicament of the individual appellants dramatically portrays this confrontation of interests and needs. Appellant Antoinette Pascucci is a single woman living alone. She has received general assistance from the City of Trenton since November 1973. Considered an employable as defined by the regulation, her grant would be limited to $119 per month.[1] Her expenses are alleged to be $207 per month, detailed as follows: mortgage payment, $70; food, $65; clothing, $5; personal items, $10; transportation to find work, $7; utilities, $45; cleaning bills, $5. She has fallen behind in her mortgage payments and faces foreclosure; her diet is inadequate and she suffers from hunger; she is unable to provide heat for her home when needed and contends that the assistance provided her is "woefully inadequate" even for mere existence.

Following a refusal by the Director of the Trenton Municipal Welfare Department to increase her financial aid from $119, the amount prescribed by the regulation, Ms. Pascucci brought suit in the Mercer County Juvenile and Domestic Relations Court challenging the denial and asserting the invalidity of the regulation placing a lower ceiling on aid to employables.

The Department of Institutions and Agencies intervened in that litigation and moved that the action be dismissed

---

[1]This Court stayed the operation of the regulation as to the individual appellants pending resolution of the issues here.

for lack of jurisdiction. The trial judge held that he did not have jurisdiction to rule on the administrative regulation, and that the proper forum was the Appellate Division pursuant to *R.* 2:2–3(a)(2). He therefore dismissed the action.

Appellant Lydia Ladyka lives alone in a Trenton apartment. She worked for the State of New Jersey until May 1974. In August of that year she began receiving municipal assistance from the City of Trenton. After a partial recovery from illness, she reverted, under the regulation, from the unemployable maximum of $178 to the employable maximum of $119 a month. She pays monthly rent of $157, is able to receive food stamps for the expenditure of an additional dollar and pays between $7 and $9 for electricity. She cannot afford to pay for a phone or purchase necessary clothing and claims to be without the "necessities of life."

Appellant Anna Mae Gray lives alone in a Trenton apartment and has received general assistance from the City of Trenton since November 1974. She is classified as employable and thus her grant is $119 per month. She pays monthly rent of $110, $1 for food stamps and is left with $8 for all of her other expenses including gas, electricity, transportation, clothing and personal items.

The departmental respondents do not contest any of these individual proofs, nor do they agree with their factual content.

On behalf of the parties Ladyka and Gray and all others similarly situated, the Public Advocate sought review in the Appellate Division of the regulation specifying lower payments to employables. We first deal with that basic issue.

### III.

The persistent unavailability of work to the individual appellants is a result of an economic phenomenon whose effects are particularly critical in New Jersey. For instance, as of November 1974 many thousands in addition to appel-

lants were unable to find work, the Mercer County area labor market suffering an unemployment rate ranging from 6.5 percent to 8.4 percent. In September 1975 the seasonally adjusted rate of unemployment in New Jersey was 13.6 percent according to statistics released by the New Jersey Department of Labor and Industry.

The legislative policy and humane purpose of the statutory plan under which the regulation was promulgated are evident:

*N. J. S. A.* 44:8–109. Public policy regarding assistance to needy persons

It is hereby declared to be the public policy of this State that every needy person shall, while in this State, be entitled to receive such public assistance as may be necessary, and that the furnishing of such public assistance is primarily the duty of the municipalities and of civic and charitable organizations but that all needy persons not otherwise provided for under the laws of this State shall hereafter receive public assistance pursuant to law and the provisions of this act. [footnote omitted].

The law exists "to the end that * * * person[s] may not suffer unnecessarily, from cold, hunger, sickness, or be deprived of shelter * * *." *N. J. S. A.* 44:8–122.

While primary responsibility for effectuating the legislative purpose is placed on the municipality (*N. J. S. A.* 44:8–109; *Higdon v. Boning,* 121 *N. J. Super.* 276, 281 (J. & D. R. Ct. 1972)), financial support (State aid) is provided by the State through the Municipal Aid Fund administered by the Commissioner, *N. J. S. A.* 44:8–110. Consequently, power for guiding the administration of the assistance programs is delegated to the Commissioner, *N. J. S. A.* 44:8–111, –112, –113, the State sharing in the financial burden. These delegated functions are very broad including the power to make such rules and regulations "as shall be necessary and proper to administer the provisions of this act," *N. J. S. A.* 44:8–150; these powers also include the duty to "[f]ormulate, promulgate and enforce standards for * * * allowance and supervision of the grants for public assistance * * *." *N. J. S. A.* 44:8–111 (f). The statute specifically provides

that "[t]he extent of individual grants shall be determined in accordance with the standards and budgets authorized by the commissioner." *N. J. S. A.* 44:8–124.

## IV.

It is upon the basis of the broad rule-making and administrative powers delegated by the statute to the Commissioner that respondents would justify the challenged regulation, emphasizing its need in respect of the finite nature of welfare resources available as previously mentioned.

■ And there is no doubt that a regulation of the general type here challenged would properly come within the orbit of delegated powers and responsibilities inhering in the Commissioner. *Avant v. Clifford,* 67 *N. J.* 496, 547–54 (1975) and cases cited. A legislative body " * * * is free to delegate legislative authority provided it has exercised 'the essentials of the legislative function' — of determining the basic legislative policy and formulating a rule of conduct * * * ." *Amalgamated Meat Cutters & Butcher Work. v. Connally,* 337 *F. Supp.* 737, 746 (D. D. C. 1971).

■ Threshold attention must be given, however, not so much to the *quantum* of delegated responsibility or the certitude of the definitive standards which accompanied it, but to the particular relationship between the way it was here exercised and the "basic legislative policy" which of course is controlling. The regulation, defining as unemployable only those who are so "because of physical, mental or emotional handicaps [making them] unable to accept employment" must be judged in the light of the legislative standard. So considered, it is plainly discordant on its face with the statutory purpose. *N. J. S. A.* 44:8–108 provides:

"Public assistance" means assistance rendered to needy persons not otherwise provided for under the laws of this State, where such persons are willing to work but are unable to secure employment due either to physical disability *or inability to find* employment * * *. [emphasis added].

■

■ While a broad grant of authority to the Commissioner may encompass different treatment of various classes of recipients, the Commissioner's powers in this regard are not unlimited. And even though accorded the benefit of the presumption of validity and regularity generally afforded to administrative regulations, such regulatory discrimination must be reasonable and not arbitrary and be in overall furtherance of the broad welfare assistance goals of the Legislature. *Motyka v. McCorkle,* 58 *N. J.* 165, 179 (1971).

■ In this respect a conflict seems apparent between the legislative standard of *N. J. S. A.* 44:8–108 describing as eligible needy persons those who are unemployable either because of physical disability or job unavailability, and the regulation which improperly breaks down the one category into two. *Cf. Mercer Council 4, Civil Serv. Ass'n v. Alloway,* 119 *N. J. Super.* 94, 99–100 (App. Div.), *aff'd* o.b., 61 *N. J.* 516 (1972).

Respondents would defend the discriminatory employable-unemployable classification by suggesting that unemployables probably have special needs justifying higher benefit levels. Yet no one has come forward with factual data, studies or reports to establish that the unemployed "employable" suffers less from cold, hunger or sickness, or pays less for food, shelter or clothing, that his human misery is lessened where joblessness results from economic handicaps rather than mental, emotional or physical impediments.

Since the classification by the regulation of unemployables in such limited sense plainly conflicts with the legislative standard it must be set aside as to those who are unemployed solely because of lack of employment opportunity.

■ As to the three individual appellants, our decision is retroactive in application. As to all others similarly situated it is prospective in nature and will be effective not earlier than 60 days from the date of filing of this opinion, — this to accommodate and give time for solution of legislative, executive or administrative problems which may arise from the effect hereof on the regulation. *Neptune City v. Avon-*

*by-the-Sea,* 61 *N. J.* 296, 310–11 (1972); *Willis v. Department of Conser. & Economic Dev.,* 55 *N. J.* 534, 541 (1970); *Goldberg v. Traver,* 52 *N. J.* 344, 347 (1968).

In the circumstances, it becomes unnecessary for the Court to reach and resolve the other legal and constitutional questions presented, as to the regulation itself.

## V.

However, we should dispose of the procedural and jurisdictional point involved. In order to deal expeditiously and humanely with the crucial hardship questions often involved in welfare needs, the Legislature wisely provided for speedy access to the Juvenile and Domestic Relations Courts by enacting *N. J. S. A.* 44:1–86:

> The director of welfare * * * shall determine who are to be relieved by him, subject to an application by any person, on at least five days' notice, to the juvenile and domestic relations court, by complaint, in writing, applying for a summary review and determination by the court of the action of the director as to the extent and amount of relief, if any, to be rendered.

For equally important reasons of uniformity and expedition in the administration of justice, *R.* 2:2–3(a) provides:

> * * * appeals may be taken to the Appellate Division as of right * * * to review final decisions or actions of any state administrative agency or officer * * * or to review the validity of any rule promulgated by such agency or officer * * *.

It is desirable and possible that these provisions be considered *in pari materia* so that each may be given effect. *See Kingsley v. Wes Outdoor Advertising Co.,* 55 *N. J.* 336, 339 (1970); *Ricci v. Ricci,* 96 *N. J. Super.* 214, 226–27 (J. & D. R. Ct. 1967).

Under the former practice in New Jersey, persons aggrieved by action or inaction of state or local administrative agencies could seek review by applying for one of the prerogative writs. *See* 1 *Bradner, New Jersey Law Practice*

§§ 528, 612, 634, 635 (1940). The writs were superseded by the Constitution of 1947 which provided that, in lieu thereof, review was to be had in the Superior Court "* * * on terms and in the manner provided by rules of the Supreme Court * * *." *N. J. Const.* (1947), Art. VI, § V, par. 4.

*R.* 2:2–3 and *R.* 2:2–4, formerly *R. R.* 4:88–8 and *R. R.* 4:88–10, were adopted pursuant to this constitutional grant. They contemplated that *"every* proceeding to review the action or inaction of a *state* administrative agency would be by appeal to the Appellate Division." *Central R. R. v. Neeld,* 26 *N. J.* 172, 185, cert. den., 357 *U. S.* 928, 78 *S. Ct.* 1373, 2 L. Ed. 2d 1371 (1958) (first emphasis added).[2] In the present case, one of the appellants not only questioned the regulation as such, but also suggested that the local welfare director's discretionary authority to grant relief was greater than that set by the State regulation. Does this additional claim against the director negate the exclusive mode of review of the regulation itself which rests in the Appellate Division? One resolution of the matter would be to find, as did Judge O'Donnell in the Juvenile and Domestic Relations Court, that the "essence" of the case, its primary character, sought review of the regulation and that, therefore, exclusive jurisdiction existed in the Appellate Division. The same conclusion, however, with which we agree, can be based on broader grounds.

As already noted the Supreme Court, in pursuance of its constitutional responsibility, has vested review of state administrative actions exclusively in the Appellate Division. Thus even if, as one of the appellants contends, review of the

[2] Only two exceptions to this rule, not here involved, have been judicially recognized. *Compare Pfleger v. State Highway Dep't,* 104 *N. J. Super.* 289, 291–93 (App. Div. 1968) *with Baldwin Constr. Co. v. Essex Cty. Bd. of Tax.,* 27 *N. J. Super.* 240, 242 (App. Div.), supplemented after reargument, 28 *N. J. Super.* 110 (App. Div. 1953), *aff'd,* 16 *N. J.* 329 (1954).

director's denial could be heard in the Juvenile and Domestic Relations Court, it is plain that review of the regulation could not. In contrast the Appellate Division may properly review the administrative regulation and "may exercise such original jurisdiction as is necessary to the complete determination of any matter on review." *R.* 2:10–5; *N. J. Const.* (1947), Art. VI, § V, par. 3. Consequently, the Appellate Division may properly hear the appellant's entire case while the Juvenile and Domestic Relations Court would be confined in its review.

In this circumstance we consider one of the cornerstone rules of New Jersey practice and procedure to be applicable, the so-called "entire controversy" doctrine expounded by Justice (then Judge) Jacobs in *Ritepoint Co. v. Felt,* 6 *N. J. Super.* 219 (App. Div. 1950). That opinion established that there should be expeditious adjudication of all matters in controversy between the parties at one time and place. *Id.* at 222. *See* Schnitzer, "Justice Nathan L. Jacobs — Architect of New Jersey's Court Structure and Judicial Exponent of Civil Procedure," 28 *Rutgers L. Rev.* 226, 231–35 (1974). Although primarily concerned with the relief available in the Law and Chancery Divisions of the Superior Court, it is a theme which pervades the entire field of practice and procedure.

Together with the complementary principle that piecemeal litigation is to be avoided, this theory would argue strongly for finding the Appellate Division to be the proper and logical forum to hear causes joining actions restricted by rule to initial resolution in the Appellate Division with other review. This result at once provides a forum to the parties in such a case and serves the ends of sound judicial administration by avoiding the inconvenience, delay and expense incident to separate trials. This would leave intact in the Juvenile and Domestic Relations Court the statutory jurisdiction of reviewing "actions" of welfare directors by hearing all of those cases not involving a challenge to the validity of state regulations.

And if the urgency of relief and the imminence of irreparable harm would so indicate, interim protection of rights would be available as was, in fact, provided by this Court in its stay orders referred to previously.

We therefore determine that initial jurisdiction of the questions presented herein, because they involved validity of a state administrative regulation, belonged in the Appellate Division. While the Juvenile and Domestic Relations Court properly disavowed jurisdiction over the subject matter in the Pascucci case, it would have been preferable for it to transfer the cause rather than to dismiss the action. R. 1:13–4(a) ; see Central R. R. v. Neeld, supra, 26 N. J. 172 at 184. Nevertheless, we exercise our discretion under the rule and decide the appeal. R. 1:13–4(b).

The regulation as to appellants and all others similarly situated is hereby invalidated, subject to the conditions and the effective date heretofore stated.

So ordered.

*For reversal*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For affirmance*—None.