W.K., JR., by his parents, W.K
and E.K, Plaintiff,

v.

**NEW JERSEY DIVISION OF DEVEL-
OPMENTAL DISABILITIES and Rob-
ert B. Nicholas, Defendants.**

Civil Action No. 96–5502 (MLP).

United States District Court,
D. New Jersey.

Aug. 18, 1997.

Herbert D. Hinkle, Lawrenceville, NJ, for Plaintiff.

Peter Verniero, Attorney General of New Jersey, Richard J. Hughes, Justice Complex, Patricia DeCotiis, Deputy Attorney General, Trenton, NJ, for Defendants.

## OPINION

PARELL, District Judge.

This matter is before the Court on motion of plaintiff W.K., Jr. ("Bill") for summary judgment and on cross-motion of defendants New Jersey Division of Developmental Disabilities ("DDD") and Robert B. Nicholas, Ph.D. ("Dr. Nicholas") for dismissal, or in the alternative, for summary judgment. For the following reasons, plaintiff's Complaint is administratively dismissed without prejudice.

## BACKGROUND

Bill, by his parents, W.K. and E.K. (collectively, "plaintiffs") filed this action for damages and injunctive relief under 42 U.S.C. § 1983 [1] on November 1, 1996. Plaintiffs contend that defendants' actions have denied Bill his constitutionally guaranteed property rights without affording him either procedural or substantive due process of law in contravention of the Fourteenth Amendment of the United States Constitution. (Compl. ¶ 16.) Bill is a thirty-five year old developmentally disabled adult. DDD is the agency charged with serving people with developmental disabilities in New Jersey. (*Id.* ¶ 5(A).) Dr. Nicholas is the Director of DDD. (Aff. of Robert B. Nicholas, Ph.D. [hereinafter "Nicholas Aff."] ¶ 1.)

---

1. Plaintiffs' Complaint also requests relief under the Americans With Disabilities Act, 42 U.S.C. § 12132. (Compl. ¶ 18.) Plaintiffs, however, have consented to voluntary dismissal of this claim. (Pls.' Reply Br. at 6 n. 5.)

Since May, 1990, Bill has resided in a residential program for people with severe disabilities operated by Bancroft, Inc. ("Bancroft"). (Compl.¶ 7.) The cost of this program, approximately $60,000 annually, is currently borne by Bill's parents because they rejected DDD's offer of placement in Bancroft's Sutton Apartment program. (Aff. of W.K. ¶ 7.) W.K. and E.K. believed that the Sutton Apartment program did not offer Bill the appropriate level of supervision, and therefore determined to place him at their own expense in a more highly supervised program offered by Bancroft. (*Id.*) Bancroft now believes that Bill requires more intensive care because of his increasingly aggressive behavior, and that the cost of this increased level of care will be approximately $120,000 annually. (*Id.* ¶¶ 4–5.)

DDD provides day and residential services to approximately 19,000 individuals with developmental disabilities. (Nicholas Aff. ¶ 2.) There are also approximately 5,000 developmentally disabled individuals on waiting lists for services; approximately 1,600 of which are assigned to the urgent category waiting list for residential services. (*Id.*) Individuals are placed off the residential waiting list when placements become available, N.J. Admin. Code § 10:46B–4.1, an emergency exists necessitating placement, N.J. Admin. Code § 10:46B–3.3, or when DDD receives a budget initiative to place individuals who have been waiting for residential services. (Nicholas Aff. ¶ 4.) When DDD receives a budget initiative, individuals are placed off the urgent category waiting list chronologically based on their date of assignment to the urgent category. (*Id.* ¶ 5.)

Bill was assigned to the urgent category waiting list residential services on May 20, 1996, pursuant to N.J. Admin. Code § 10:4C–1.13(c), because his parents are over 55 years old. (*Id.* ¶ 7.) Budget initiatives have been made available for fiscal years 1997 and 1998 in order to place individuals off the urgent category waiting list for residential services. (*Id.* ¶ 6.) Bill, however, is not eligible for placement pursuant to either the 1997 or 1998 budget initiative because of his recent assignment to the waiting list. (*Id,* ¶ 8.)

In May, 1996, because of the increased cost of the Bancroft program, plaintiffs sought to obtain funding from DDD for Bill's residential placement. (Aff. of Herbert H. Hinkle [hereinafter "Hinkle Aff."] § 5; Compl. ¶ 11.) DDD advised plaintiffs in July, 1996, that although Bill was assigned to the urgent category as of May 20, 1996, there were currently no vacancies in appropriate residential programs. (Hinkle Aff., Ex. C: Letter from Bernard B. Blanks, Assistant Regional Manager.) Plaintiffs, in response, advised DDD "that the family appeals the failure to provide appropriate services" and requested a settlement conference. (*Id.*, Ex. D: Letter from Herbert D. Hinkle.)

DDD subsequently wrote back to plaintiffs and informed them that because: (1) Bill was recently assigned to the urgent category and therefore not eligible for the fiscal year 1997 waiting list initiative; (2) there are approximately 1,500 persons assigned to the urgent category; and (3) these material facts are not disputed, DDD concluded that the matter did not require administrative fact finding. (*Id.*, Ex. E: Letter from Robert B. Nicholas, Ph. D.) DDD did, however, offer to schedule a meeting with plaintiffs to "give [plaintiffs] an opportunity to present additional facts" prior to taking any final action on their request. (*Id.*) DDD further noted that it would reevalute the situation based upon the information plaintiffs provides at the meeting and that following the meeting, it

> may determine that there are factual matters in dispute requiring the application of the administrative appeals process or that exceptional circumstances exist which necessitate placement prior to those individuals who have been assigned to the Urgent Category longer [than Bill]. Facts may also be presented at the meeting which cause the Division to determine that an emergency need for placement exists. If this occurs, emergency placement will be offered pursuant to N.J.A.C. 10:465–3.3.

(*Id.*)

Plaintiffs did not schedule a meeting as DDD suggested. Instead, plaintiffs' counsel determined that DDD's refusal to transmit the matter for a hearing before the Office of Administrative Law ("OAL") was "a gross and blatant denial if due process" and that if

DDD did not change its position, plaintiffs would seek a court order compelling DDD to grant such a hearing. (*Id.,* Ex. F: Letter from Herbert D. Hinkle.)

Notwithstanding this threat, DDD did not refer to the OAL for a hearing. Rather, it informed plaintiffs that it stood by its original determination that there are no material facts in dispute, and therefore that no fact finding is needed. (*Id.,* Ex. G: Letter from Robert B. Nicholas, Ph.D.) Once again, however, DDD invited plaintiffs to meet with its representative to present any additional facts or to identify those material facts that plaintiffs believe are in dispute. (*Id.*) Plaintiffs apparently declined this second offer, and the instant litigation followed.

## *DISCUSSION*

Defendants argue that plaintiffs are barred by the principles of abstention from challenging, in this Court, DDD's preliminary decision not to transmit plaintiffs' appeal of DDD's denial of immediate residential services. The Court agrees.

■ The abstention doctrine announced in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), provides that a federal court should abstain from hearing a case over which it has jurisdiction when the following three requirements are satisfied: (1) there must be pending or ongoing state proceedings which are judicial in nature; (2) the state proceedings must implicate important state interests; and, (3) the state proceedings must afford an adequate opportunity to raise any constitutional issues. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *O'Neill v. City of Philadelphia,* 32 F.3d 785, 789 (3d Cir.1994), *cert. denied,* 514 U.S. 1015, 115 S.Ct. 1355, 131 L.Ed.2d 213 (1995). The principles of *Younger* abstention have been extended to

2. To qualify as a proceeding which is judicial in nature, it must be established that the inquiry "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908). The fact that a proceeding is not presided over by a judicial officer or that a full panoply of due process rights is not afforded is not dispositive of the adjudicative nature of the proceeding for *Younger* purposes.

apply to state administrative proceedings. *Middlesex County,* 457 U.S. at 435, 102 S.Ct. at 2522.

## I. *Ongoing State Proceedings*

■ In the present matter, plaintiffs apparently do not dispute that there is an ongoing state proceeding that is judicial nature.[2] (Pls.' Reply Br. at 6.) Plaintiffs have offered to evidence that DDD has taken any final action on their request. Because DDD has not yet taken final action, plaintiffs' appeal is of an ongoing administrative proceeding, and plaintiffs' action is premature. In effect, plaintiffs are claiming a violation of their federal rights before DDD has taken final action on their appeal. Thus, the first prong under the *Younger* abstention doctrine is met.

■ Notwithstanding the fact that DDD has not yet taken final action, it is clearly DDD's expressed intent to deny plaintiffs an administrative hearing based on the facts currently known to DDD. (Defs.' Br. in Opp'n at 9; Nicholas Aff. ¶ 9.) Even assuming, *arguendo,* that DDD has taken final action on plaintiffs' request, *Younger's* first prong is still satisfied.

■ The proper forum for review of an agency's final action is the New Jersey Superior Court, Appellate Division, pursuant to N.J. Ct. R. 2:2–3(a)(2). *See Pascucci v. Vagott,* 71 N.J. 40, 52, 362 A.2d 566, 573 (1976). "It is well-settled that '[f]or *Younger* purposes, a state's trial and appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in midprocess would demonstrate a lack of respect for the State as sovereign.'" *O'Neill,* 32 F.3d at 790 (quoting *New Orleans Pub. Serv. v. Council of New Orleans,* 491

*District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476–79, 103 S.Ct. 1303, 1311–13, 75 L.Ed.2d 206 (1983).

Here, Dr. Nicholas' application of administrative law regarding evidentiary hearings to the facts of this case was certainly quasi-judicial action. Furthermore, as discussed *infra,* the review available in the New Jersey Superior Court, Appellate Division unquestionably constitutes a judicial proceeding.

U.S. 350, 369, 109 S.Ct. 2506, 2518, 105 L.Ed.2d 298 (1989)).

■ Furthermore, the principles set forth in *Younger* and its progeny do not demand that there be a currently pending state proceeding at the time of either the filing of the federal complaint or determination of the motion to abstain. Rather, it is sufficient that the federal plaintiff has an adequate opportunity to resolve the federal issues in a state proceeding. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975); *O'Neill,* 32 F.3d at 790–91 (holding that *Younger* abstention was proper where a federal claimant failed to pursue state-court judicial review of an unfavorable state administrative determination). Here, assuming that DDD's decision is final, plaintiffs have such an opportunity before the New Jersey Superior Court, Appellate Division. *See* N.J. Ct. R. 2:2–3(a)(2).

## II. Important State Interests

■ Defendants contend that DDD's interest in the administration of its appeal process is unquestionably an important state interest which the law has sought to protect. (Defs.' Br. in Opp'n at 11.) Plaintiffs do not contest this assertion.

In *O'Neill,* the Court of Appeals for the Third Circuit stated:

> The requirement that litigants pursue state-court judicial review of state administrative decisions serves two additional purposes, identified by the Eighth Circuit in *[Alleghany Corp. v. Pomeroy,* 898 F.2d 1314 (8th Cir.1990) ], which go to the very heart of the "comity" concerns upon which *Younger* abstention is grounded: (1) "the state courts may construe state law in a way which renders a constitutional decision unnecessary," *id.,* 898 F.2d at 1317, citing *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (stating that an "important reason for abstention is to avoid unwarranted determination of federal constitutional questions"), and (2) "interests of comity are advanced, and friction reduced, if the courts of a state, rather than the federal courts, determine that the United States Constitution requires the

> state to alter its practices." *Pomeroy,* 898 F.2d at 1318.

32 F.3d at 791.

Thus, given New Jersey's significant and substantial interests in construing its own laws as well as in allocating fairly its scarce resources supporting its developmentally disabled citizens, the Court concludes that the second prong under the *Younger* abstention doctrine is met.

## III. Opportunity to Raise the Federal Claims in State Court

■ The third prong under *Younger* requires that a plaintiff have the opportunity to raise federal constitutional claims before the administrative agency or in state-court judicial review of the agency's determination. *O'Neill,* 32 F.3d at 792 (citing *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 629, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986) and *Middlesex County,* 457 U.S. at 436, 102 S.Ct. at 2523). "Moreover, when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Id.* (quotation omitted)

■ Here, plaintiffs assert that "defendants' argument that plaintiffs are free to appeal the director's decision to the Appellate Division of the Superior Court, ignores the fact that plaintiffs must do so without discovery and without a record that establishes the merits of plaintiffs' case." (Pls.' Reply Br. at 6.) Plaintiffs further contend that if their case is remanded for a hearing by the Appellate Division, defendants will "have succeeded in significantly delaying the case." (*Id.*)

The Appellate Division is authorized to exercise full judicial review of all final decisions of New Jersey state agencies. N.J. Ct. R. 2:2–3(a)(2). Furthermore, plaintiffs will clearly have an adequate opportunity to raise their constitutional challenges in the state proceedings. *See, e.g., Maisonet v. Department of Human Servs.,* 140 N.J. 214, 221, 657 A.2d 1209, 1212 (1995) ("[a] section 1983

action may be brought in state court"). Finally, plaintiffs themselves recognize that as to their inadequate discovery argument, the Appellate Division may remand their case for a hearing if it desires to augment the record or if discovery is required. (Pls.' Reply Br. at 6.) Plaintiffs cite no case law, and this Court is aware of none, holding that *Younger* abstention does not apply if such a in some way delays the final resolution of plaintiffs' allegations.[3]

Accordingly, all three of the *Younger* abstention criteria have been satisfied, and this Court must abstain from taking any action on plaintiffs' Complaint and dispositive motion unless any of the *Younger* exceptions apply.

### IV. Younger Abstention Exceptions

The Supreme Court has developed three exceptions to *Younger* abstention doctrine: (1) the "state proceeding is motivated by a desire to harass or is conducted in bad faith." *Huffman*, 420 U.S. at 611, 95 S.Ct. at 1212; (2) the "challenged provision is flagrantly and patently violative of express constitutional prohibitions," *Moore v. Sims*, 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979); and (3) there is "an extraordinarily pressing need for immediate equitable relief." *Kugler v. Helfant*, 421 U.S. 117, 125, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15 (1975). The Court finds that none of the exceptions exist here.

 First, the bad faith prosecution exception is not available where the pending claims could be presented in state proceedings and there is no allegation of impermissible bias on the part of the state judiciary. *Moore*, 442 U.S. at 432, 99 S.Ct. at 2381. The Appellate Division can hear all of plaintiffs' claims and there is no allegation of a biased state judiciary, thus, the Court concludes that the bad faith exception is not present.

 The second exception regarding patently unconstitutional laws is only available if there is a statute at issue which is "flagrantly and patently violative of express constitutional provisions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger*, 401 U.S. at 53–54, 91 S.Ct. at 755. Plaintiffs do not challenge the constitutionality of N.J. Ct. R. 2:2–3(a)(2) designating the Appellate Division as the proper forum for review of an agency's final action. Furthermore, Rule 2:2–3(a)(2) is in no way patently violative of any constitutional provision. Accordingly, the Court finds that the second exception is not met.

 The final *Younger* exception, "an extraordinarily pressing need for immediate equitable relief," applies when the federal court concludes that the state proceedings are inadequate because there is no available state forum for the plaintiff's constitutional claims, *Gerstein v. Pugh*, 420 U.S. 103, 107–08, 95 S.Ct. 854, 859–60, 43 L.Ed.2d 54 (1975), or when the state judicial or administrative officers have a conflict of interest or are biased. *Gibson v. Berryhill*, 411 U.S. 564, 576–78, 93 S.Ct. 1689, 1696–98, 36 L.Ed.2d 488 (1973). The state proceedings available here afford plaintiffs the opportunity to raise all of their constitutional claims; furthermore, there is no showing or allegation that the state judiciary is biased. The Court therefore concludes that all of the requirements of, and none of the exceptions to, *Younger* abstention are met here. Accordingly, the Court finds that it should abstain in this matter under *Younger*. An Order accompanies this Opinion.

### ORDER

For the reasons stated in the accompanying Opinion,

**IT IS THEREFORE** on this 18th day of August, 1997, **ORDERED** that plaintiffs'

---

**3.** Plaintiffs also argue that *Younger* abstention does apply because "this Court is not being asked to enjoin a state administrative proceeding, but rather to compel state officials to give plaintiffs access to the state administrative procedures which will afford them discovery and the opportunity to make a complete record before a state agency." (Pls.' Reply Br. at 6.) Plaintiffs' Com-

plaint, however, seeks injunctive relief in the form of a permanent injunction compelling defendants "to adopt such policies as are necessary to ensure the future protection of plaintiffs' rights." (Compl.¶ 19b.) Such a mandatory injunction clearly falls within the *Younger* analysis, and plaintiffs cite no case law to the contrary.

Complaint be and hereby is administratively **DISMISSED WITHOUT PREJUDICE.**