895 A.2d 1154

DANIEL PRADO, PLAINTIFF, v. STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT OF LABOR, LEONARD KATZ, LINDA CHESKO, MARTIN GARTZMAN AND MARK BOYD, DEFENDANTS–APPELLANTS, AND HARRY PAPPAS, DEFENDANT–RESPONDENT.

ARTHUR O'KEEFE, PLAINTIFF, v. STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT OF LABOR, MICHAEL MCCARTHY, LEONARD KATZ, MARTIN GARTZMAN AND MARK BOYD, DEFENDANTS–APPELLANTS, AND HARRY PAPPAS, DEFENDANT–RESPONDENT.

JAMES VALLE, PLAINTIFF, v. STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT OF LABOR, MICHAEL MCCARTHY, LEONARD KATZ, MARTIN GARTZMAN AND MARK BOYD, DEFENDANTS–APPELLANTS, AND HARRY PAPPAS, DEFENDANT–RESPONDENT.

Argued January 17, 2006—Decided May 8, 2006.

414

*Patrick DeAlmeida,* Assistant Attorney General, argued the cause for appellants (*Peter C. Harvey,* Attorney General of New Jersey, attorney; *Nancy Kaplen,* Assistant Attorney General, of counsel; *Mr. DeAlmeida* and *Leslie M. Gore,* Deputy Attorney General, on the brief).

*Eric G. Kahn* argued the cause for respondent (*Javerbaum Wurgaft Hicks & Zarin,* attorneys).

Justice ALBIN delivered the opinion of the Court.

In this case, a state employee was sued by co-workers for, among other things, violating their rights under the Law Against Discrimination and the Conscientious Employee Protection Act. In

accordance with *N.J.S.A.* 59:10A–1, the employee requested that the Attorney General undertake his defense. Based on an internal investigation, the Attorney General declined to do so, claiming that the employee acted outside the scope of his employment and engaged in willful misconduct. In this appeal, we articulate the standard that must inform the Attorney General's decision whether to defend a state employee in a civil suit within the purview of the New Jersey Tort Claims Act. We also set forth the manner of judicial review available when the Attorney General refuses to defend.

## I.

### A.

At a staff meeting on June 7, 2001, defendant Harry Pappas, Special Assistant to the Commissioner of the Department of Labor, addressed Department of Labor employees for several hours concerning changes intended both "to improve enforcement of prevailing wage regulations and to achieve higher performance standards by the field staff." Afterwards, a number of those present complained that Pappas made "offensive and/or inappropriate comments," particularly in describing Hispanic workers and women. As a result of those complaints, the Labor Department's Affirmative Action Officer, Gail Ericson, conducted an investigation, interviewing Pappas and nineteen of the twenty-six persons who attended the meeting.

All those interviewed stated that Pappas "referred to non-English-speaking workers at inspection sites as 'wetbacks.' " Several remembered Pappas describing the "Spanish language as 'jibber-jabber' or some similar phrase." Seven staff members stated that Pappas "used derogatory terms in reference to women, variously reported as 'bitch,' 'skirt,' or 'dolly.' " It was also reported that he told a female administrator to " 'go sit at [her] desk and count paper clips.' " Various staff members described Pappas' general behavior during the meeting as "aggressive,

demeaning, arrogant, and insensitive." Additionally, they claimed that Pappas boasted that he had a "close relationship with the Commissioner and Governor" and "that anything he said or did" had their "full backing."

During his interview, Pappas gave a decidedly different slant to what occurred at the meeting. He explained that he was implementing "understandably unpopular" changes and that his conduct was not "inconsistent with business necessity." He admitted that he "used the terms 'wetback' and 'boat-jumper,' possibly several times, but insisted that he was trying to make a point that whatever you call [those] individuals, they deserve to be treated like people." He maintained that he did not intend to offend anyone by using those terms. He, however, "denied making derogatory remarks or using belittling appellations in reference to women."

At the conclusion of the investigation, Labor Commissioner Mark B. Boyd determined that Pappas had made "various offensive, discriminatory remarks" when referring both to "non-English-speaking workers at inspection sites" and women. He also noted that "the majority of workers in attendance at the June 7, 2001 meeting" considered Pappas' behavior to be "insensitive and abrasive." The Commissioner asserted that the ethnic slurs and sexist language used by Pappas were "unacceptable in any place of business controlled by [the] Department, especially when used by an executive employee while making a presentation to staff employees." The Commissioner concluded that Pappas had "violated both the letter and intent of the New Jersey State Policy Prohibiting Discrimination, Harassment or Hostile Environment[s] in the Workplace."

As a result of his findings, the Commissioner directed that Pappas receive sensitivity counseling and "refrain from using discriminatory and offensive language in the future." He also indicated that "Human Resources [would] be consulted to determine the appropriate administrative action to be taken."

On August 3, 2001, Commissioner Boyd issued Pappas a written reprimand. Although acknowledging Pappas' argument that he "had no discriminatory intent" and that his "comments regarding illegal aliens were taken out of context," the Commissioner nevertheless determined that Pappas' comments were "unacceptable." Pappas was advised that he must comply "scrupulously" with departmental policies governing conduct in the workplace and perform his duties respectful of "the legitimate expectations of [his] colleagues to function in a non-discriminatory, non-hostile work environment."

Stemming from their attendance at the June 7, 2001 staff meeting, plaintiff Daniel Prado, Bureau Chief of the Office of Wage and Hour Compliance, and plaintiffs Arthur O'Keefe, James Valle, and Ashleigh Chamberlain, Labor Department employees, filed separate complaints against the State of New Jersey, the Department of Labor, Pappas, Commissioner Boyd, and other high-ranking Labor Department officials. Plaintiffs presented two central themes in their lawsuits—that Pappas violated the Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42, and that Pappas and other Labor Department officials retaliated against plaintiffs for complaining about Pappas' offensive conduct in violation of the Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19–1 to –8.[1] Additionally, three plaintiffs claimed that Pappas defamed them and one plaintiff claimed that Pappas had abused and physically threatened him.

Pappas then made a request that the Attorney General provide him with a defense and that the State indemnify him in the event of any adverse judgment. Approximately one year later, on July 2, 2003, an Assistant Attorney General wrote to Pappas that his request had been denied pursuant to *N.J.S.A.* 59:10A–2 because "the acts alleged [against him were] outside the scope of [his]

---

[1] Only O'Keefe did not allege that Pappas' actions violated the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–1 to –42.

employment and constitute[d] willful misconduct." [2]

On March 4, 2004, Pappas filed a motion in the Law Division to compel the Attorney General to provide him with a defense and the State to indemnify him in the actions brought by plaintiffs. The trial court granted Pappas' motion in part, ordering the Attorney General to provide a defense, but declined to hold the State responsible for indemnification until "all the facts are in," presumably after discovery or a trial. The Attorney General then moved for reconsideration, arguing for the first time that the trial court lacked jurisdiction to order him to represent Pappas. The Attorney General contended that his denial of Pappas' request for representation was a final agency decision and thus reviewable only by the Appellate Division pursuant to *Rule* 2:2–3(a)(2). Finding that the Attorney General's lack-of-jurisdiction claim was belatedly raised, the court refused to revisit its earlier ruling. The court also expressed doubts that the Attorney General's denial of a defense to Pappas constituted a final agency decision requiring Appellate Division review.

## B.

The Appellate Division granted the Attorney General's motion for leave to appeal, and later affirmed the trial court's orders. *Prado v. State,* 376 *N.J.Super.* 231, 237, 245, 870 *A.*2d 294 (App. Div.2005).[3] The appellate panel concluded that the Law Division acted properly in exercising jurisdiction over the matter and in ordering the Attorney General to provide Pappas with a defense. *Id.* at 238–40, 243–45, 870 *A.*2d 294.

---

[2] The Attorney General provided representation to the other Labor Department defendants.

[3] Before the motion for leave to appeal was filed with this Court, plaintiffs Prado, Valle, and Chamberlain entered into a settlement with the State and dismissed their claims against all defendants, including Pappas. *See Prado v. State, supra,* 376 *N.J.Super.* at 237 n. 2, 870 *A.*2d 294.

While recognizing the general rule that appeals from final decisions of an administrative agency must be taken to the Appellate Division, *R.* 2:2–3(a)(2), the panel noted that the rule is subject to "limited exceptions." *Prado, supra,* 376 *N.J.Super.* at 238, 870 *A.*2d 294. One such exception, according to the panel, is that a trial court can exercise authority to review a state agency's or officer's action when "considerations of efficient judicial administration militate in favor of" doing so. *Ibid.* The panel found that this case fell within that exception. *Id.* at 239, 870 *A.*2d 294.

The panel reasoned that in many circumstances determining whether the Attorney General correctly denied a state employee representation "will require a thorough understanding of the factual allegations and legal theories in the underlying action, which the trial court judge often will have obtained by hearing pretrial motions." *Ibid.* The panel presumed that appellate review of the Attorney General's duty-to-defend decision "in a pending trial court action would have the capacity to interfere with the orderly disposition of that action." *Ibid.* Calculating that "[a] typical appeal ... takes nearly a year to complete," the panel expressed concern that appellate review might delay resolution of the proceedings. *Ibid.* In further support of its position, the panel noted that "neither the Appellate Division nor the Supreme Court ever raised any question concerning the Law Division's jurisdiction to review the Attorney General's denial of representation." *Id.* at 240, 870 *A.*2d 294. The panel therefore held that the trial court had jurisdiction to decide whether the Attorney General properly denied Pappas representation. *Id.* at 239–40, 870 *A.*2d 294.

The panel also affirmed the trial court's order requiring the Attorney General to provide counsel to Pappas. *Id.* at 245, 870 *A.*2d 294. The panel observed that when the Attorney General provides a defense to a state employee, the State also must provide indemnification to that employee pursuant to *N.J.S.A.* 59:10–1. *Id.* at 241–43, 870 *A.*2d 294. In view of that statute, the panel maintained that even if a trier of fact later determines that

the employee acted outside the scope of employment or engaged in actual fraud or willful misconduct, the State would be responsible for payment of any liability award. *Id.* at 242, 870 *A.*2d 294. For that reason, the panel interpreted *N.J.S.A.* 59:10A–1 to require the Attorney General to provide representation "only if there is no realistic possibility that any judgment against the employee would warrant a finding that the act upon which liability was based was outside the scope of employment or involved actual fraud, actual malice or willful misconduct." *Id.* at 242–43, 870 *A.*2d 294. With that standard in mind, the panel determined that there was no "realistic possibility that Pappas' use of offensive language at the staff meeting could be found to have been 'not within the scope of employment' or to constitute 'willful misconduct.'" *Id.* at 243–45, 870 *A.*2d 294. Accordingly, the panel found that the Attorney General was obliged to defend Pappas. *Id.* at 245, 870 *A.*2d 294.

We granted the Attorney General's motion for leave to appeal. 185 *N.J.* 250, 883 *A.*2d 1052 (2005).

## II.

■ We first address whether the Law Division, where the actions against Pappas were pending, had jurisdiction to review the Attorney General's refusal to provide a defense to Pappas. The appellate panel in this case acknowledged that the Attorney General's decision constituted a final agency determination under *Rule* 2:2–3(a)(2) and that ordinarily an appeal from an adverse ruling must be taken to the Appellate Division. *Prado, supra,* 376 *N.J.Super.* at 238, 870 *A.*2d 294. The panel, however, contended that the duty-to-defend determination fell within an exception to that rule because judicial economy and efficient court administration favored having all issues related to the underlying action decided in one court. *Id.* at 238–39, 870 *A.*2d 294. Because we do not find persuasive reasons for carving out the exception to *Rule* 2:2–3(a)(2) suggested by the panel, the Appellate Division will

retain primary jurisdiction to review decisions of the Attorney General denying a defense to a state employee.

*Rule* 2:2–3(a)(2) provides that "appeals may be taken to the Appellate Division as of right ... to review final decisions or actions of any state administrative agency or officer." [4] That rule vests the Appellate Division with exclusive jurisdiction over all such decisions or actions. *See Pascucci v. Vagott,* 71 *N.J.* 40, 52, 362 *A.*2d 566 (1976) (commenting that Supreme Court "has vested review of state administrative actions exclusively in the Appellate Division"); *Found. for Fair Contracting, Ltd. v. N.J. State Dep't of Labor,* 316 *N.J.Super.* 437, 451, 720 *A.*2d 619 (App.Div.1998) ("An appeal from administrative agency action is exclusively cognizable in the Appellate Division."); *Twp. of Montclair v. Hughey,* 222 *N.J.Super.* 441, 446, 537 *A.*2d 692 (App.Div.1987) (noting that *Rule* 2:2–3(a)(2) "has been interpreted to mean that the mode of review so provided is exclusive").

The Attorney General is the "chief law enforcement officer of the State," *N.J.S.A.* 52:17B–98, and head of the Department of Law and Public Safety, an executive department of state government. *See N.J.S.A.* 52:17B–2. There is no question that the Department of Law and Public Safety is a state administrative agency and the Attorney General a state officer for purposes of *Rule* 2:2–3(a)(2). It therefore follows that an appeal from a final administrative decision of the Attorney General rests in the Appellate Division, barring a compelling policy reason to depart from the dictates of *Rule* 2:2–3(a)(2). *See State Health Planning & Coordinating Council v. Hyland,* 161 *N.J.Super.* 468, 472–73, 391 *A.*2d 1247 (App.Div.1978) (accepting that Attorney General's denial of representation to State Health Planning and Coordinating Council was "final decision of a state officer" and therefore

---

[4] The predecessor to the rule "contemplated that '*every* proceeding to review the action or inaction of a *state* administrative agency would be by appeal to the Appellate Division.' " *Pascucci v. Vagott,* 71 *N.J.* 40, 52, 362 *A.*2d 566 (1976) (quoting *Central R.R. Co. of N.J. v. Neeld,* 26 *N.J.* 172, 185, 139 *A.*2d 110, *cert. denied,* 357 *U.S.* 928, 78 *S.Ct.* 1373, 2 *L.Ed.*2d 1371 (1958)).

properly before Appellate Division as of right pursuant to *Rule* 2:2–3(a)(2)).

Here, the panel would make an exception to *Rule* 2:2–3(a)(2) when the state employee requests representation in a case already pending in the Law Division. *Prado, supra,* 376 *N.J.Super.* at 238–39, 870 *A.*2d 294. The panel found that when a case is pending in the Law Division, "efficient judicial administration" warrants having the issue decided there. *Ibid.* That finding rests on two assumptions. One is that review of the Attorney General's decision will not occur until well into the discovery period in the underlying action, thus placing the trial court, which has an understanding of the case, in a better position to resolve the issue of representation. However, the determination of a state employee's right to representation pursuant to the Tort Claims Act should be made shortly after he makes his request for a defense to the Attorney General. In most circumstances, the request should be made on the heels of the filing of the complaint against the state employee.[5] Ideally, resolution of the representation issue should precede the taking of discovery. After all, if the state employee is entitled to counsel, it is the Attorney General's designee who should be taking the discovery. In that early stage, the Law Division is no better suited than the Appellate Division to decide the issue.

The panel's second assumption is that the Appellate Division cannot resolve the issue in a timely manner. That is a reasonable concern given the average amount of time it takes to dispose of an appeal. We have every confidence, however, that the Appellate Division can speedily review and decide whether the Attorney General has abused his discretion in denying representation to a state employee. If the representation issue is decided shortly after the commencement of the action against the state employee,

---

[5] Notably, within ten days of receiving a complaint, a state employee seeking indemnification must notify the Attorney General, who then may "assume exclusive control of the employee's representation." *N.J.S.A.* 59:10–3.

there likely will be a limited record, consisting only of the complaint, an internal investigation by a state agency, and the employee's submissions. Moreover, it is unlikely in the typical case that the issue to be resolved will be complex, requiring lengthy research or much more than a short opinion. For those reasons, we will require that an appeal from the Attorney General's denial of representation be placed on an expedited track. Of course, early resolution of that issue requires the cooperation of not only the state employee, who must not delay in requesting representation, but also the Attorney General, who must render a prompt decision. *See Cal. Gov't Code* § 995.2(b) (providing that pursuant to California Tort Claims Act employee must be informed whether defense will be provided within twenty days of his or her request).

■ We are mindful that sometimes even the best laid plans are not implemented and there may be circumstances when the underlying action has been ongoing for a significant period by the time the issue of representation arises. In such cases, the trial court may be in a better position to determine the reasonableness of the Attorney General's denial of legal representation. In those circumstances, we leave to the sound discretion of the Appellate Division the authority to transfer jurisdiction to the Law Division if efficient judicial management calls for such action. *See Pascucci, supra,* 71 *N.J.* at 53, 362 *A.*2d 566 (holding that ordinarily "there should be expeditious adjudication of all matters in controversy between the parties at one time and place").

### III.

We next turn to the standard that governs the Attorney General's decision whether to provide a defense to a state employee pursuant to the Tort Claims Act.[6] Under *N.J.S.A.* 59:10–1, if the

---

[6] The Attorney General does not question whether his duty-to-defend responsibilities under the Tort Claims Act extend to a LAD or CEPA claim. *See Prado, supra,* 376 *N.J.Super.* at 241 n. 4, 870 *A.*2d 294. Rather, it appears to be the Attorney General's position that he will not provide a defense for an employee in

Attorney General "provides for the defense of an employee or former employee," the State must indemnify the employee in the event of a settlement or adverse judgment.[7] *See N.J.S.A.* 59:10–1; *Chasin v. Montclair State Univ.,* 159 *N.J.* 418, 426, 732 *A.2d* 457 (1999). The Appellate Division in this case expressed concern that "the Attorney General's assumption of responsibility for representation of a State employee [would] subject[ ] the State to potential liability for an act that was outside the scope of employment or that involved actual fraud, actual malice or willful misconduct, contrary to the legislative intent expressed in *N.J.S.A.* 59:10–2." *Prado, supra,* 376 *N.J.Super.* at 242, 870 *A.2d* 294. For that reason, the panel, in effect, created a presumption that the Attorney General owed no duty to defend a state employee. The panel held that the Attorney General must provide representation "only if there is no realistic possibility that any judgment against the employee would warrant a finding that the act upon which liability was based was outside the scope of employment or involved actual fraud, actual malice or willful misconduct." *Id.* at 242–43, 870 *A.2d* 294. We find that standard to be inconsistent with the statutes defining the duty of the Attorney General in such matters.

The Attorney General's duty to defend is set forth in *N.J.S.A.* 59:10A–1. That statute provides:

Except as provided in [*N.J.S.A.* 59:10A–2], the Attorney General shall, upon a request of an employee or former employee of the State, provide for the defense of any action brought against such State employee or former State employee on account of an act or omission in the scope of his employment.

---

a LAD or CEPA action when he determines that the employee acted beyond the scope of his employment or engaged in willful misconduct.

[7] The State is not required to pay, however, "for punitive or exemplary damages or damages resulting from the commission of a crime." *N.J.S.A.* 59:10–1. The State may choose, nevertheless, to provide indemnification "for exemplary or punitive damages resulting from the employee's civil violation of State or federal law if, in the opinion of the Attorney General, the acts committed by the State employee upon which the damages are based did not constitute actual fraud, actual malice, willful misconduct, or an intentional wrong." *Ibid.*

[*N.J.S.A.* 59:10A-1.]

The Attorney General, however, "may refuse to provide for the defense" of the state employee

if he determines that:

a.  the act or omission was not within the scope of employment; or

b.  the act or the failure to act was because of actual fraud, willful misconduct or actual malice; or

c.  the defense of the action or proceeding by the Attorney General would create a conflict of interest between the State and the employee or former employee. [*N.J.S.A.* 59:10A-2.]

■ Under that statutory scheme, an employee's right to counsel is triggered by his requesting that the Attorney General provide representation. The burden then is on the Attorney General to articulate reasons for not providing a defense. *See* Office of the Governor, *News Release* 2 (June 1, 1972) (stating that "Attorney General *will* represent State employees on their request for the defense of matters arising out of the scope of their employment, except in the case of actual fraud, willful misconduct or actual malice of the employee" (emphasis added)). If he determines that any one of three exceptions applies, the Attorney General may refuse to provide a defense to the employee. *See N.J.S.A.* 59:10A-1, -2.

■ A general principle of statutory interpretation is that "exceptions in a legislative enactment are to be strictly but reasonably construed, consistent with the manifest reason and purpose of the law." *Serv. Armament Co. v. Hyland,* 70 *N.J.* 550, 558–59, 362 *A.*2d 13 (1976). Thus, "[a]ll doubt should be resolved in favor of the general provision" contained in *N.J.S.A.* 59:10A-1, which is to afford representation, "rather than the proviso or exception" contained in *N.J.S.A.* 59:10A-2, which permits the Attorney General to refuse to defend. *See N.J. State Bd. of Optometrists v. S.S. Kresge Co.,* 113 *N.J.L.* 287, 296, 174 *A.* 353 (Sup.Ct.1934), *aff'd as modified,* 115 *N.J.L.* 495, 181 *A.* 152 (E. & A.1935) (per curiam); *see also* 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.11 (5th ed.1992) (noting that "where a general provision in a statute has certain limited exceptions, all doubts

should be resolved in favor of the general provision rather than the exceptions").

For those reasons, we hold that the Attorney General must provide a defense to a state employee who requests representation pursuant to *N.J.S.A.* 59:10A–1 unless the Attorney General determines that it is more probable than not that one of the three exceptions set forth in *N.J.S.A.* 59:10A–2 applies. *See SSI Med. Servs., Inc. v. State,* 146 *N.J.* 614, 622, 685 *A.*2d 1 (1996) ("In the absence of any administrative rule or regulation to the contrary, the traditional preponderance of the evidence standard applies to administrative agency matters."). That formulation places the appropriate burden on the Attorney General to justify a departure from the general rule of representation. If the Attorney General refuses to provide representation to the employee, he must give the employee a written statement explaining the reasons for the refusal. *See State v. Leonardis,* 71 *N.J.* 85, 117–19, 363 *A.*2d 321 (1976) (requiring that administrative agency provide statement of reasons explaining its actions to facilitate appellate review and protect against arbitrary action). In the event that the employee is denied representation, that statement will aid appellate review of the Attorney General's determination. On appeal, the Attorney General's final administrative decision is entitled to the usual deference accorded to such a decision. An appellate court should not reverse the Attorney General's determination unless "it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." [8] *In re Taylor,* 158 *N.J.* 644, 657, 731 *A.*2d 35 (1999) (per curiam) (internal quotation marks omitted).

---

[8] It bears mentioning that the indemnification statute gives the state employee an additional opportunity in another forum and on a fully developed record to redress an erroneous decision by the Attorney General. That statute provides:

If the Attorney General refuses to provide for the defense of a State employee as required by the provisions of [*N.J.S.A.* 59:10A–1 to –6], the employee or former employee of the State shall be entitled to indemnification from the State if he establishes that the act or omission upon which the

## IV.

In summary, the Attorney General must provide a defense for a state employee who requests representation, unless the Attorney General determines that it is more probable than not that: (1) the employee acted outside the scope of his employment; (2) the employee engaged in actual fraud or willful misconduct, or acted with actual malice; or (3) the defense of the employee would create a conflict of interest with the State. *N.J.S.A.* 59:10A–2. If the Attorney General denies the employee's request for representation, he must give the employee a written statement of reasons justifying the denial.

It bears mentioning that it is not acceptable for the Attorney General to take approximately one year to deny a state employee a defense after receipt of a timely request for counsel. The employee, who is served with a complaint and facing the onset of the discovery process, needs a prompt response to his request, and the court, which is presiding over the matter, should not have to delay proceedings because of the uncertain status of counsel. An early resolution of the issue is in the best interests of all parties, particularly the unrepresented employee.

In view of the substantial delay in this case, it is understandable that the Appellate Division considered the trial court the proper forum to review the Attorney General's refusal-to-defend decision. As discussed earlier, however, an appeal of the Attorney General's decision must be taken to the Appellate Division. Once there, the appeal will be placed on an expedited track. The Appellate Division, however, has the authority to transfer the refusal-to-defend issue to the Law Division in those limited circumstances in

---

claim or judgment was based occurred within the scope of his employment as an employee of the State and the State fails to establish that he acted or failed to act because of actual fraud, actual malice or willful misconduct. [*N.J.S.A.* 59:10–2.]

The right to indemnification thus is a counterweight to the administrative deference accorded to the Attorney General's duty-to-defend decision, which typically will be made in the early stage of the underlying case.

which efficient judicial management calls for joining that issue with the underlying action.

## V.

Accordingly, we reverse and remand to the Appellate Division for proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—6.

*Opposed*—None.