870 A.2d 294

DANIEL PRADO, PLAINTIFF, v. STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT OF LABOR, LEONARD KATZ, LINDA CHESKO, MARTIN GARTZMAN AND MARK BOYD, DEFENDANTS–APPELLANTS, AND HARRY PAPPAS, DEFENDANT–RESPONDENT.

ARTHUR O'KEEFE, PLAINTIFF, v. STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT OF LABOR, LEONARD KATZ, MICHAEL MCCARTHY, MARTIN GARTZMAN AND MARK BOYD, DEFENDANTS–APPELLANTS, AND HARRY PAPPAS, DEFENDANT–RESPONDENT.

JAMES VALLE, PLAINTIFF, v. STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT OF LABOR, LEONARD KATZ, MICHAEL MCCARTHY, MARTIN GARTZMAN AND MARK BOYD, DEFENDANTS–APPELLANTS, AND HARRY PAPPAS, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 15, 2005—Decided March 31, 2005.

232

234

Before Judges SKILLMAN, GRALL and RIVA.

*Leslie M. Gore,* Deputy Attorney General, argued the cause for appellants (*Peter C. Harvey,* Attorney General, attorney; *Patrick DeAlmeida,* Deputy Attorney General, of counsel; *Ms. Gore,* on the brief).

*Eric G. Kahn* argued the cause for respondent (*Javerbaum Wurgaft Hicks & Zarin,* attorneys; *Mr. Kahn,* of counsel and on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

This appeal involves interpretation of the statutory provisions governing the Attorney General's duty to provide representation to a State employee who is sued for money damages for an act in the scope of employment. The appeal also involves the jurisdiction of the trial court before which the suit is pending to review the Attorney General's denial of representation.

Defendant Harry Pappas is a former Special Assistant to the Commissioner of Labor. On June 7, 2001, Pappas addressed members of the staff of the Office of Wage and Hour Compliance at a regularly scheduled staff meeting to inform them of various changes in procedures designed to improve enforcement of prevailing wage regulations. Pappas spoke for several hours. During the course of his comments, Pappas used the term "wetbacks" and "boat-jumpers" to refer to non-English-speaking workers at inspection sites and the term "bitch" to refer to female workers. Pappas also bragged about his close relationships with the Commissioner of Labor and Governor and indicated that his comments regarding the operations of the Office of Wage and Hour Compliance had their "full backing."

After the meeting, several staff members who had attended the meeting complained about the offensive language Pappas had used in speaking to them. The Commissioner referred these complaints to the Department's Affirmative Action Officer, who interviewed Pappas and eighteen of the twenty-six staff members who

attended the meeting. This investigation confirmed that Pappas had used offensive language, and on this basis, the Commissioner issued a letter of reprimand, which stated in part:

> An investigation was conducted by Gail Ericson, Affirmative Action Officer, as a result of allegations by several members of the staff of the Office of Wage and Hour Compliance that you made statements which violated the New Jersey Policy Prohibiting Discrimination, Harassment or Hostile Environment in the Workplace.
>
> I appreciate your argument that you had no discriminatory intent and that your comments regarding illegal aliens were taken out of context. You specifically contend that your use of an ethnic slur was intended to convey that no matter what an individual may call an illegal alien, they were still entitled to protection by the State of New Jersey. Regardless of your contention, the use of such a term is unacceptable.
>
> I expect that you will scrupulously adhere to a standard of personal conduct, which corresponds to all State and departmental policies that prohibit the type of conduct for which you are now being reprimanded.

Subsequently, four members of the Office of Wage and Hour staff who had complained to the Commissioner about Pappas' offensive comments brought civil actions against Pappas, Commissioner Mark Boyd, Assistant Commissioner Leonard Katz, Director of the Division of Wage and Hour Martin Gartzman, Assistant Director of the Division Michael McCarthy and the Department of Labor. Their complaints alleged that defendants had taken adverse employment actions against them because they complained about Pappas' offensive comments, in violation of the Conscientious Employee Protection Act, *N.J.S.A.* 34:19-1 to -8. Their complaints also alleged that Pappas' comments at the June 7, 2001 meeting violated the Law Against Discrimination (LAD), *N.J.S.A.* 10:5-1 to -42. In addition, two plaintiffs alleged that Pappas had defamed them by calling them "incompetent or negligent." These actions were eventually consolidated.

Pappas requested the Attorney General to represent him in these actions and to indemnify him for any judgment that might be entered. On July 2, 2003, an Assistant Attorney General sent a letter to Pappas denying his request for representation, which stated: "Please be advised that your request has been denied pursuant to *N.J.S.A.* 59:10A-2 as the acts alleged in the above-captioned matter[s] are outside the scope of your employment and

constitute willful misconduct." The Attorney General is providing representation to the other defendants.

Sometime thereafter, Pappas filed a motion in the Law Division, where the actions against him were pending, to compel the Attorney General to provide him with a defense and indemnification. The trial court granted Pappas' motion and entered an order requiring the Attorney General to provide him representation.

The Attorney General filed a motion for reconsideration in which he argued for the first time that only this court may review a decision to deny a State employee representation.[1] The trial court denied the motion.

We granted the Attorney General's motion for leave to appeal from the orders requiring the Attorney General to provide Pappas representation and denying the Attorney General's motion for reconsideration.[2]

The Attorney General argues that the Law Division lacked jurisdiction to enter an order requiring him to provide representation to Pappas, and alternatively, that the court erred in compelling the Attorney General to provide Pappas representation because the Attorney General's representative correctly concluded that Pappas' offensive comments were outside the scope of his employment and constituted willful misconduct. We reject both

---

[1] We note that although this appeal involves review of the Attorney General's decision to deny Pappas representation, the caption and Attorney General's briefs indicate that the Attorney General is appearing in his capacity as attorney for the Department of Labor and its employees other than Pappas rather than on his own behalf.

[2] The motion for leave to appeal was brought under the captions of only three of the actions in which Pappas sought representation by the Attorney General. The omission of the fourth case from the caption is not explained.

We have been advised that all the actions, except *O'Keefe*, have now been settled. The settlements provide for dismissal of all plaintiffs' claims, including their claims against Pappas. The settlements did not involve any payments by Pappas.

arguments and affirm the trial court order requiring the Attorney General to provide Pappas representation.

## I

■ *Rule* 2:2–3(a)(2) provides that "appeals may be taken to the Appellate Division as of right ... to review final decisions or actions of any state administrative agency or officer." Under this rule, the jurisdiction to review the action of a State administrative agency or officer is ordinarily vested exclusively in the Appellate Division. *See Pascucci v. Vagott,* 71 *N.J.* 40, 51–53, 362 *A.*2d 566 (1976). However, our courts have recognized limited exceptions to this general rule where considerations of efficient judicial administration militate in favor of conferring authority upon a trial court to review the action of a State agency or officer. *See, e.g., D.J. Miller & Assocs. v. State, Dep't of Treasury, Div. of Purchase & Prop.,* 356 *N.J.Super.* 187, 191–92, 811 *A.*2d 952 (App.Div.2002); *Bd. of Educ. of Newark v. N.J. Dep't of Treasury, Div. of Pensions,* 279 *N.J.Super.* 489, 496–98, 653 *A.*2d 589 (App.Div. 1995), *aff'd on other grounds,* 145 *N.J.* 269, 678 *A.*2d 660 (1996); *Waldie v. State,* 264 *N.J.Super.* 558, 561–63, 625 *A.*2d 37 (App.Div. 1993); *Morales v. County of Hudson,* 236 *N.J.Super.* 406, 420–21, 566 *A.*2d 191 (App.Div.1989); *Pfleger v. State Highway Dep't,* 104 *N.J.Super.* 289, 250 *A.*2d 16 (App.Div.1968).

In *Pascucci,* the Court recognized that where the ordinary rules regarding allocation of jurisdiction among divisions of the superior court would result in separate courts hearing different parts of a single controversy, those rules should be subordinated to the overriding goal of efficient judicial administration by assigning responsibility for all aspects of the same or closely related matters to a single tribunal. 71 *N.J.* at 51–54, 362 *A.*2d 566. In that case, a welfare recipient sought to challenge both final decisions of a municipal director of public welfare, which ordinarily would have been reviewable in the former Juvenile and Domestic Relations Court, and the validity of a regulation adopted by the Division of Public Welfare, which ordinarily would be reviewable in this court.

*Id.* at 46, 362 *A.2d* 566. However, the Court concluded that the " 'entire controversy' doctrine," which the Court characterized as "one of the cornerstone rules of New Jersey practice and procedure," required this court to hear all aspects of the controversy in order to avoid "the inconvenience, delay and expense incident to" separate proceedings in separate courts. *Id.* at 53, 362 *A.2d* 566.

We are satisfied that the same considerations of efficient judicial administration require review of the denial of legal representation in a pending trial court action to be conducted in that court. In many circumstances, a determination regarding the reasonableness of a denial of representation of a State employee will require a thorough understanding of the factual allegations and legal theories in the underlying action, which the trial court judge often will have obtained by hearing pretrial motions. Moreover, a requirement that this court review a denial of representation of a State employee in a pending trial court action would have the capacity to interfere with the orderly disposition of that action. A typical appeal to this court takes nearly a year to complete. If review of the denial of representation of a State employee had to be pursued in this court, the trial court might feel compelled to stay all proceedings in the underlying action pending the outcome of the appeal, particularly if the State employee lacked sufficient resources to pay his or her own counsel pending resolution of the representation question.

We note that the two cases upon which the Attorney General relies in support of his argument that Pappas should have been required to challenge the denial of representation by a separate appeal to this court did not involve representation in a pending trial court action. Both *In re Napoleon*, 303 *N.J.Super.* 630, 697 *A.2d* 574 (App.Div.1997) and *State Health Planning & Coordinating Council v. Hyland*, 161 *N.J.Super.* 468, 391 *A.2d* 1247 (App. Div.1978), involved the Attorney General's denial of representation in pending administrative proceedings. Therefore, there was no related matter pending in another division of the superior court, and for that reason review of the denial of representation was

governed by the usual rule that the Appellate Division has exclusive jurisdiction to review any action of a State administrative agency or officer.

Finally, our conclusion that the Attorney General's denial of representation of a State employee in a pending trial court action is reviewable in that court is indirectly supported by *Chasin v. Montclair State Univ.*, 159 *N.J.* 418, 732 *A.*2d 457 (1999), in which, as in this case, the Attorney General denied a State employee's request for representation in a pending trial court action. After that denial, the trial court dismissed the underlying action for failure to exhaust administrative remedies, and the case was ultimately settled while pending before the Office of Administrative Law. *Id.* at 424, 732 *A.*2d 457. The State employee then filed a new action in the Law Division seeking reimbursement for the fees she had incurred defending the trial court and administrative actions. The Supreme Court ultimately upheld the Attorney General's decision to deny representation to the State employee, *id.* at 441, 732 *A.*2d 457, but neither the Appellate Division nor the Supreme Court ever raised any question concerning the Law Division's jurisdiction to review the Attorney General's denial of representation. Although the jurisdictional issue was not adjudicated because it was not raised, the fact that neither the Attorney General nor the reviewing courts questioned the Law Division's jurisdiction supports the conclusion that review of this form of administrative action is not within our exclusive jurisdiction.

## II

The Attorney General's basic duty to provide representation to State employees in civil proceedings is set forth in *N.J.S.A.* 59:10A–1, which states in pertinent part:

> Except as provided in [*N.J.S.A.* 59:10A–2], the Attorney General shall, upon a request of an employee or former employee of the State, provide for the defense of any action brought against such State employee or former State employee on account of an act or omission in the scope of his employment.

However, the Attorney General may refuse to provide representation to a State employee if he determines:

a.  the act or omission was not within the scope of employment; or

b.  the act or the failure to act was because of actual fraud, willful misconduct or actual malice; or

c.  the defense of the action or proceeding by the Attorney General would create a conflict of interest between the State and the employee or former employee.

[*N.J.S.A.* 59:10A-2.] [3]

Under these statutory provisions, "the Attorney General must defend a State employee for actions committed in the scope of employment as long as one of the ... exceptions [set forth in *N.J.S.A.* 59:10A-2] does not apply." *Wright v. State*, 169 *N.J.* 422, 444, 778 *A.*2d 443 (2001).[4]

*N.J.S.A.* 59:10-1 provides in relevant part:

---

[3] The Attorney General's denial of representation in this case was based solely on *N.J.S.A.* 59:10A-2(a) and (b). Therefore, we have no occasion to consider a denial of representation under *N.J.S.A.* 59:10A-2(c) based on a conflict of interest.

[4] The Attorney General does not contend that the obligation to provide representation to State employees is limited to actions brought under the Tort Claims Act, *N.J.S.A.* 59:1-1 to 12-3. To the contrary, the Attorney General has recognized a duty to provide representation under *N.J.S.A.* 59:10A-1 in other types of actions. *See, e.g., In re Petition for Review of Opinion 552 of Advisory Comm. on Prof. Ethics,* 102 *N.J.* 194, 200, 507 *A.*2d 233 (1986) ("New Jersey construes its statutory defense and indemnification obligations under the Tort Claims Act, *N.J.S.A.* 59:10-1 to -4; *N.J.S.A.* 59:10A-1 to -6, as extending to the defense of actions brought pursuant to 42 *U.S.C.* § 1983."). In fact, a 1996 directive of the Attorney General regarding representation of State employees provided to us after oral argument states that "*N.J.S.A.* 59:10A-1 sets forth the statutory basis for the Attorney General's obligation to defend state employees in discrimination matters." We note that the Court held in *Chasin* that "the Attorney General's obligation to defend and indemnify [State employees] arises only in the context of civil actions seeking damages for tortious conduct." 159 *N.J.* at 431, 732 *A.*2d 457. However, the only issue in *Chasin* was whether the Attorney General's representation and indemnification obligations extend to an action seeking injunctive relief. *See id.* at 431–33, 732 *A.*2d 457. Consequently, the Court did not have occasion to consider whether "tortious conduct" consists solely of conduct that may result in the imposition of liability under the Tort Claims Act or whether the Attorney General's defense and indemnification obligations extend to claims under other statutory provisions such as the LAD. Because the Attorney General does not question his obligation to provide representation in LAD actions under appropriate circumstances, we do not decide the issue.

If pursuant to [*N.J.S.A.* 59:10A–1 *et seq.*] the Attorney General provides for the defense of an employee or former employee, the State shall provide indemnification for the State employee.

*N.J.S.A.* 59:10–2 provides in relevant part:

If the Attorney General refuses to provide for the defense of a State employee as required by the provisions of [*N.J.S.A.* 59:10A–1 *et seq.*], the employee or former employee of the State shall be entitled to indemnification from the State if he establishes that the act or omission upon which the claim or judgment was based occurred within the scope of his employment as an employee of the State and the State fails to establish that he acted or failed to act because of actual fraud, actual malice or willful misconduct.

If the State employee establishes that he was entitled to a defense under the provisions of this chapter, the State shall pay or reimburse him for any bona fide settlement agreements entered into by the employee, and shall pay or reimburse him for any judgments entered against the employee, and shall pay or reimburse him for all costs of defending the action, including reasonable counsel fees and expenses, together with costs of appeal, if any.

Under these statutory provisions, if the Attorney General assumes responsibility for representation of a State employee, the State must indemnify the employee for any judgment that may be entered, except for punitive or exemplary damages, even if the employee's act was outside the scope of employment or involved actual fraud, willful misconduct or actual malice. *Chasin, supra,* 159 *N.J.* at 426, 732 *A.*2d 457. However, if the Attorney General refuses to provide representation, the State is obligated to indemnify the employee and provide reimbursement for defense costs only if the employee establishes that the act occurred within the scope of employment, and the State fails to establish that the act involved actual fraud, actual malice or willful misconduct. *Ibid.* Because the Attorney General's assumption of responsibility for representation of a State employee subjects the State to potential liability for an act that was outside the scope of employment or that involved actual fraud, actual malice or willful misconduct, contrary to the legislative intent expressed in *N.J.S.A.* 59:10–2, we conclude that *N.J.S.A.* 59:10A–1 should be construed to require the Attorney General to provide representation to a State employee only if there is no realistic possibility that any judgment against the employee would warrant a finding that the act upon which

liability was based was outside the scope of employment or involved actual fraud, actual malice or willful misconduct.

The Attorney General denied Pappas' request for representation on the ground that "the acts alleged . . . are outside the scope of your employment and constitute willful misconduct." Although the letter denying Pappas' request for representation does not identify what "acts" the Attorney General determined to be outside the scope of Pappas' employment or to constitute willful misconduct, the Attorney General's submission to the trial court and his briefs filed in this appeal indicate that the Attorney General relies solely upon Pappas' comments at the June 7, 2001 staff meeting as the basis for his denial of representation. The Attorney General does not contend that the allegations upon which plaintiffs' CEPA claims are predicated would justify a denial of representation, and indeed, the Attorney General has provided representation to the other State employees against whom those claims were brought. Nor does the Attorney General contend that the defamation claims against Pappas would justify a denial of representation. Thus, the question is whether there is any realistic possibility that Pappas' use of offensive language at the staff meeting could be found to have been "not within the scope of employment" or to constitute "willful misconduct."

■ An act "is generally considered to be within the scope of employment if, 'it is of the kind [that the servant] is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part, by a purpose to serve the master.' " *Di Cosala v. Kay,* 91 *N.J.* 159, 169, 450 *A.*2d 508 (1982) (quoting *Restatement (Second) of Agency* § 228 (1957)); *see also Carter v. Reynolds,* 175 *N.J.* 402, 411–12, 815 *A.*2d 460 (2003). Under this standard, Pappas' comments at the June 7, 2001 meeting were clearly made within the scope of his employment even though he used ethnically and sexually offensive terms during the course of his presentation to the staff. The Commissioner or one of his deputies evidently sent Pappas to the staff meeting to describe changes in the procedures to be followed by

the Office of Wage and Hour Compliance. Thus, even though Pappas used inappropriate language in performing this duty, his presentation to the staff was the kind of work he was employed to perform; it occurred within normal work hours in the Department of Labor building; and his evident purpose was to serve the interests of the Department. Therefore, there was no basis for the Attorney General's conclusion that Pappas' comments were made outside the scope of his employment.

"Willful misconduct" has been defined as "the commission of a forbidden act with actual (not imputed) knowledge that the act is forbidden." *Fielder v. Stonack,* 141 *N.J.* 101, 124, 661 *A.*2d 231 (1995) (quoting *Marley v. Borough of Palmyra,* 193 *N.J.Super.* 271, 294–95, 473 *A.*2d 554 (Law Div.1983)). We do not believe that a trier of fact could find that Pappas' comments at the staff meeting constituted the alleged forbidden act of a violation of the LAD. Racially, ethnically or sexually offensive comments in the workplace will support a LAD claim only if they create a hostile or abusive working environment. *Taylor v. Metzger,* 152 *N.J.* 490, 498–502, 706 *A.*2d 685 (1998). To establish such a claim, the plaintiff "must demonstrate that the defendant's 'conduct (1) would not have occurred but for the employee's [race, ethnicity or sex]; and [the conduct] was (2) severe or pervasive enough to make a (3) reasonable [person of that race, ethnicity or sex] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.'" *Id.* at 498, 706 *A.*2d 685 (quoting *Lehmann v. Toys 'R' Us, Inc.,* 132 *N.J.* 587, 603–04, 626 *A.*2d 445 (1993)). The circumstances under which Pappas used ethnically and sexually offensive language at a staff meeting could not support such findings. Although some of the persons who attended the meeting were Hispanic or female, Pappas' comments were not directed at them but rather at what he considered to be deficiencies in the operations of the Office of Wage and Hour Compliance. Moreover, insofar as the record before us indicates, Pappas used this language on only one occasion, following which the Commissioner issued a written repri-

mand and told him not to use such language again. Consequently, a trier of fact could not find that a reasonable Hispanic or female would believe that the conditions of employment had been altered and a hostile or abusive working environment created by Pappas' comments. *See Oakley v. Wianecki,* 345 *N.J.Super.* 194, 202–04, 784 *A.*2d 727 (App.Div.2001).

Furthermore, there is no basis for a finding that Pappas had any intent in making his presentation to the staff of the Office of Wage and Hour Compliance to violate the LAD or even any internal policy regarding the use of ethnically or sexually offensive language in the workplace. Significantly, the Commissioner of Labor at least implicitly accepted Pappas' statement that he had no discriminatory intent in using this language. Moreover, the Commissioner did not conclude that Pappas had violated the LAD; his only conclusion was that Pappas had violated a policy directive, entitled "New Jersey Policy Prohibiting Discrimination, Harassment or Hostile Environment in the Workplace," the specific provisions of which are not before us. But whatever that document may provide regarding the use of ethnically or sexually offensive language in the workplace, there is no basis for concluding that Pappas' comments at the staff meeting were uttered with "actual knowledge" that they were forbidden.[5] *Fielder v. Stonack, supra,* 141 *N.J.* at 124, 661 *A.*2d 231. Therefore, the trial court correctly concluded that Pappas is entitled to representation by the Attorney General.

Affirmed.

---

[5] The denial of representation in the case was also inconsistent with the Attorney General's 1996 policy directive regarding representation of State employees in LAD actions, which states that representation will be denied only if there has been an internal agency "finding of *affirmative* discriminatory or harassing conduct, such as inappropriate touching, racial slurs or the like." Because the Commissioner of Labor only found that Pappas had used ethnically and sexually offensive language at a meeting, not that he had directed ethnic or sexual slurs at his subordinates or engaged in any other conduct that could be found to violate the LAD, the Commissioner's determination did not constitute such a finding of affirmative discriminatory or harassing conduct.