908 A.2d 816

DANIEL PRADO, PLAINTIFF, v. STATE OF NEW JERSEY, DE-
FENDANT–RESPONDENT, AND NEW JERSEY DEPARTMENT
OF LABOR, LEONARD KATZ, LINDA CHESKO, MARTIN
GARTZMAN AND MARK BOYD, DEFENDANTS, AND HARRY
PAPPAS, DEFENDANT–APPELLANT.

ARTHUR O'KEEFE, PLAINTIFF, v. STATE OF NEW JERSEY, DE-
FENDANT–RESPONDENT, AND NEW JERSEY DEPARTMENT
OF LABOR, LEONARD KATZ, MICHAEL MCCARTHY, MARTIN
GARTZMAN AND MARK BOYD, DEFENDANTS, AND HARRY
PAPPAS, DEFENDANT–APPELLANT.

JAMES VALLE, PLAINTIFF, v. STATE OF NEW JERSEY, DEFEN-
DANT–RESPONDENT, AND NEW JERSEY DEPARTMENT OF
LABOR, LEONARD KATZ, MICHAEL MCCARTHY, MARTIN
GARTZMAN AND MARK BOYD, DEFENDANTS, AND HARRY
PAPPAS, DEFENDANT–APPELLANT.

ASHLEIGH CHAMBERLAIN, PLAINTIFF, v. STATE OF NEW JER-
SEY, DEFENDANT–RESPONDENT, AND NEW JERSEY DE-
PARTMENT OF LABOR, LEONARD KATZ, MICHAEL MCCAR-
THY, MARTIN GARTZMAN, ALBERT KROLL, AND MARK
BOYD, DEFENDANTS, AND HARRY PAPPAS, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued telephonically September 14, 2006—Decided October 17, 2006.

Before Judges SKILLMAN, HOLSTON, JR. and GRALL.

*Eric G. Kahn,* argued the cause for appellant Harry Pappas *(Javerbaum Wurgaft Hicks & Zarin,* attorneys; *Mr. Kahn,* on the brief).

*June K. Forrest,* Assistant Attorney General, argued the cause for respondents State of New Jersey and Attorney General *(Anne Milgram,* Acting Attorney General, attorney; *Nancy Kaplen,* Assistant Attorney General, of counsel; *Patrick DeAlmeida,* Assistant Attorney General, on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

This appeal is before us for the second time. In our first opinion, we held that the Attorney General was required under the provisions of the Tort Claims Act dealing with the representation of State employees, *N.J.S.A.* 59:10A–1 to –6, to provide representation to defendant, Harry Pappas, a former Special Assistant to the Commissioner of Labor, in four actions brought against him under the Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42. *Prado v. State,* 376 *N.J.Super.* 231, 240–45, 870 *A.*2d 294 (App.Div.2005). The Supreme Court granted the Attorney General's motion for leave to appeal and reversed on the ground that we had applied the wrong standard in determining whether the Attorney General was required to provide Pappas representation. *Prado v. State,* 186 *N.J.* 413, 424–27, 895 *A.*2d 1154 (2006).[1] The

---

[1] Our prior opinion also held that the Attorney General's denial of representation was reviewable in the Law Division. 376 *N.J.Super.* at 238–40, 870 *A.*2d

Court remanded to this court for reconsideration of the representation issue based on the standard it had articulated. *Id.* at 429, 895 *A.*2d 1154. We in turn remanded the matter to the Attorney General for reconsideration based on this standard.

An Assistant Attorney General, acting on behalf of the Attorney General, reaffirmed her predecessor's decision to deny Pappas representation. Although the Attorney General's representative gave Pappas a statement of reasons for the denial of representation, as required by the Court's opinion, *id.* at 427, 895 *A.*2d 1154, she did not identify any factual circumstances relevant to the representation issue in addition to those set forth in this court's and the Supreme Court's prior opinions.

The Supreme Court's opinion contains the following description of the facts relevant to the Attorney General's obligation to represent Pappas:

At a staff meeting on June 7, 2001, defendant Harry Pappas, Special Assistant to the Commissioner of the Department of Labor, addressed Department of Labor employees for several hours concerning changes intended both "to improve enforcement of prevailing wage regulations and to achieve higher performance standards by the field staff." Afterwards, a number of those present complained that Pappas made "offensive and/or inappropriate comments," particularly in describing Hispanic workers and women. As a result of those complaints, the Labor Department's Affirmative Action Officer, Gail Ericson, conducted an investigation, interviewing Pappas and nineteen of the twenty-six persons who attended the meeting.

All those interviewed stated that Pappas "referred to non-English-speaking workers at inspection sites as 'wetbacks.'" Several remembered Pappas describing the "Spanish language as 'jibber-jabber' or some similar phrase." Seven staff members stated that Pappas "used derogatory terms in reference to women, variously reported as 'bitch,' 'skirt,' or 'dolly.'" It was also reported that he told a female administrator to "'go sit at [her] desk and count paper clips.'" Various staff members described Pappas' general behavior during the meeting as "aggressive, demeaning, arrogant, and insensitive." Additionally, they claimed that Pappas boasted that he had a "close relationship with the Commissioner and Governor" and "that anything he said or did" had their "full backing."

---

294. However, the Supreme Court held that this court rather than the trial court before which the underlying action is pending ordinarily should review the Attorney General's denial of representation of a State employee. 186 *N.J.* at 421–24, 895 *A.*2d 1154.

During his interview, Pappas gave a decidedly different slant to what occurred at the meeting. He explained that he was implementing "understandably unpopular" changes and that his conduct was not "inconsistent with business necessity." He admitted that he "used the terms 'wetback' and 'boat-jumper,' possibly several times, but insisted that he was trying to make a point that whatever you call [those] individuals, they deserve to be treated like people." He maintained that he did not intend to offend anyone by using those terms. He, however, "denied making derogatory remarks or using belittling appellations in reference to women."

At the conclusion of the investigation, Labor Commissioner Mark B. Boyd determined that Pappas had made "various offensive, discriminatory remarks" when referring both to "non-English-speaking workers at inspection sites" and women. He also noted that "the majority of workers in attendance at the June 7, 2001 meeting" considered Pappas' behavior to be "insensitive and abrasive." The Commissioner asserted that the ethnic slurs and sexist language used by Pappas were "unacceptable in any place of business controlled by [the] Department, especially when used by an executive employee while making a presentation to staff employees." The Commissioner concluded that Pappas had "violated both the letter and intent of the New Jersey State Policy Prohibiting Discrimination, Harassment or Hostile Environment[s] in the Workplace."

As a result of his findings, the Commissioner directed that Pappas receive sensitivity counseling and "refrain from using discriminatory and offensive language in the future." He also indicated that "Human Resources [would] be consulted to determine the appropriate administrative action to be taken."

On August 3, 2001, Commissioner Boyd issued Pappas a written reprimand. Although acknowledging Pappas' argument that he "had no discriminatory intent" and that his "comments regarding illegal aliens were taken out of context," the Commissioner nevertheless determined that Pappas' comments were "unacceptable." Pappas was advised that he must comply "scrupulously" with departmental policies governing conduct in the workplace and perform his duties respectful of "the legitimate expectations of [his] colleagues to function in a non-discriminatory, non-hostile work environment."

Stemming from their attendance at the June 7, 2001 staff meeting, plaintiff Daniel Prado, Bureau Chief of the Office of Wage and Hour Compliance, and plaintiffs Arthur O'Keefe, James Valle, and Ashleigh Chamberlain, Labor Department employees, filed separate complaints against the State of New Jersey, the Department of Labor, Pappas, Commissioner Boyd, and other high-ranking Labor Department officials. Plaintiffs presented two central themes in their lawsuits— that Pappas violated the Law Against Discrimination (LAD), *N.J.S.A.* 10:5-1 to -42, and that Pappas and other Labor Department officials retaliated against plaintiffs for complaining about Pappas' offensive conduct in violation of the Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19-1 to -8. Additionally, three plaintiffs claimed that Pappas defamed them and one plaintiff claimed that Pappas had abused and physically threatened him.

[186 *N.J.* at 416-18, 895 *A.*2d 1154.]

After we granted the Attorney General's motion for leave to appeal from the order requiring him to represent Pappas, the Attorney General settled the actions brought by Prado, Valle and Chamberlain. The settlements provided for the dismissal of all of plaintiffs' claims, including their claims against Pappas. These settlements did not involve any payments by Pappas. In accordance with our original opinion, the Attorney General subsequently assumed responsibility for representing Pappas in the O'Keefe action, which did not present any claim under the LAD. *See* 186 *N.J.* at 418, n. 1, 895 *A.2d* 1154. On May 17, 2006, the trial court granted summary judgment dismissing O'Keefe's claims against Pappas. O'Keefe has appealed from this dismissal.

A State employee's or former State employee's right to representation by the Attorney General is governed by *N.J.S.A.* 59:10A-1 and -2. *N.J.S.A.* 59:10A-1 provides in pertinent part:

Except as provided in [*N.J.S.A.* 59:10A-2], the Attorney General shall, upon a request of an employee or former employee of the State, provide for the defense of any action brought against such State employee or former State employee on account of an act or omission in the scope of his employment.

*N.J.S.A.* 59:10A-2 provides:

The Attorney General may refuse to provide for the defense of an action referred to in [*N.J.S.A.* 59:10A-1] if he determines that:

a. the act or omission was not within the scope of employment; or

b. the act or the failure to act was because of actual fraud, willful misconduct or actual malice; or

c. the defense of the action or proceeding by the Attorney General would create a conflict of interest between the State and the employee or former employee.

If the Attorney General refuses to provide representation to a State employee or former State employee, *N.J.S.A.* 59:10-2 entitles the employee or former employee to indemnification for all costs of defending the action, including reasonable counsel fees, as well as reimbursement for any judgment, unless the act or omission upon which the claim was based was not within the scope of employment or constituted actual fraud, willful misconduct or actual malice. *N.J.S.A.* 59:10-2 provides in pertinent part:

If the Attorney General refuses to provide for the defense of a State employee as required by [*N.J.S.A.* 59:10A-1 and -2] the employee or former employee of the

State shall be entitled to indemnification from the State if he establishes that the act or omission upon which the claim or judgment was based occurred within the scope of his employment as an employee of the State and the State fails to establish that he acted or failed to act because of actual fraud, actual malice or willful misconduct.

If the State employee establishes that he was entitled to a defense under the provisions of this chapter, the State shall pay or reimburse him for any bona fide settlement agreements entered into by the employee, and shall pay or reimburse him for any judgments entered against the employee, and shall pay or reimburse him for all costs of defending the action, including reasonable counsel fees and expenses, together with costs of appeal, if any.

Thus, the State may decline to indemnify the defense costs of a State employee who the Attorney General has refused to defend only if one of the grounds set forth in *N.J.S.A.* 59:10A–2(a) and (b) applies—that the act or omission upon which the action was based "was not within the scope of employment" or constituted "actual fraud, willful misconduct or actual malice." If the Attorney General refused to defend the employee on the ground that such defense "would create a conflict of interest between the State and the employee or former employee[,]" *N.J.S.A.* 59:10A–2(c), and the claim was based on an act or omission within the scope of employment and did not constitute actual fraud, willful misconduct or actual misconduct, the State must indemnify the employee for his or her defense costs. *See Chasin v. Montclair State Univ.,* 159 *N.J.* 418, 432, 732 *A.*2d 457 (1999).

In our original opinion we concluded that "[b]ecause the Attorney General's assumption of responsibility for representation of a State employee subjects the State to potential liability for an act that was outside the scope of employment or that involved actual fraud, actual malice or willful misconduct, contrary to the legislative intent expressed in *N.J.S.A.* 59:10–2, ... *N.J.S.A.* 59:10A–1 should be construed to require the Attorney General to provide representation to a State employee only if there is no realistic possibility that any judgment against the employee would warrant a finding that the act upon which liability was based was outside the scope of employment or involved actual fraud, actual malice or willful misconduct." 376 *N.J.Super.* at 242–43, 870 *A.*2d 294. We also concluded that there was "no realistic possibility" that Pap-

pas' use of offensive language at the Office of Wage and Hour Compliance staff meeting could be found not to have been "within the scope of [his] employment" or to constitute "willful misconduct": [2]

An act "is generally considered to be within the scope of employment if, 'it is of the kind [that the servant] is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part, by a purpose to serve the master.'" *Di Cosala v. Kay*, 91 *N.J.* 159, 169, 450 *A.2d* 508 (1982) (quoting *Restatement (Second) of Agency* § 228 (1957)); *see also Carter v. Reynolds*, 175 *N.J.* 402, 411–12, 815 *A.2d* 460 (2003). Under this standard, Pappas' comments at the June 7, 2001 meeting were clearly made within the scope of his employment even though he used ethnically and sexually offensive terms during the course of his presentation to the staff. The Commissioner or one of his deputies evidently sent Pappas to the staff meeting to describe changes in the procedures to be followed by the Office of Wage and Hour Compliance. Thus, even though Pappas used inappropriate language in performing this duty, his presentation to the staff was the kind of work he was employed to perform; it occurred within normal work hours in the Department of Labor building; and his evident purpose was to serve the interests of the Department. Therefore, there was no basis for the Attorney General's conclusion that Pappas' comments were made outside the scope of his employment.

"Willful misconduct" has been defined as "the commission of a forbidden act with actual (not imputed) knowledge that the act is forbidden." *Fielder v. Stonack*, 141 *N.J.* 101, 124, 661 *A.2d* 231 (1995) (quoting *Marley v. Borough of Palmyra*, 193 *N.J.Super.* 271, 294–95, 473 *A.2d* 554 (Law Div.1983)). We do not believe that a trier of fact could find that Pappas' comments at the staff meeting constituted the alleged forbidden act of a violation of the LAD. Racially, ethnically or sexually offensive comments in the workplace will support a LAD claim only if they create a hostile or abusive working environment. *Taylor v. Metzger*, 152 *N.J.* 490, 498–502, 706 *A.2d* 685 (1998). To establish such a claim, the plaintiff "must demonstrate that the defendant's 'conduct (1) would not have occurred but for the employee's [race, ethnicity or sex]; and [the conduct] was (2) severe or pervasive enough to make a (3) reasonable [person of that race, ethnicity or sex] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.'" *Id.* at 498, 706 *A.2d* 685 (quoting *Lehmann v. Toys 'R' Us, Inc.*, 132 *N.J.* 587, 603–04, 626 *A.2d* 445 (1993)). The circumstances under which Pappas used ethnically and sexually offensive language at a staff meeting could not support such findings. Although some of the persons who attended the meeting were

---

[2] Our opinion did not consider whether the Attorney General could have refused to provide representation to Pappas on the ground of conflict of interest because the Attorney General did not refuse representation on that basis nor did the Attorney General's brief argue that representation could have been refused on that basis.

Hispanic or female, Pappas' comments were not directed at them but rather at what he considered to be deficiencies in the operations of the Office of Wage and Hour Compliance. Moreover, insofar as the record before us indicates, Pappas used this language on only one occasion, following which the Commissioner issued a written reprimand and told him not to use such language again. Consequently, a trier of fact could not find that a reasonable Hispanic or female would believe that the conditions of employment had been altered and a hostile or abusive working environment created by Pappas' comments. *See Oakley v. Wianecki*, 345 *N.J.Super.* 194, 202–04, 784 A.2d 727 (App.Div.2001).

Furthermore, there is no basis for a finding that Pappas had any intent in making his presentation to the staff of the Office of Wage and Hour Compliance to violate the LAD or even any internal policy regarding the use of ethnically or sexually offensive language in the workplace. Significantly, the Commissioner of Labor at least implicitly accepted Pappas' statement that he had no discriminatory intent in using this language. Moreover, the Commissioner did not conclude that Pappas had violated the LAD; his only conclusion was that Pappas had violated a policy directive, entitled "New Jersey Policy Prohibiting Discrimination, Harassment or Hostile Environment in the Workplace," the specific provisions of which are not before us. But whatever that document may provide regarding the use of ethnically or sexually offensive language in the workplace, there is no basis for concluding that Pappas' comments at the staff meeting were uttered with "actual knowledge" that they were forbidden. *Fielder v. Stonack, supra,* 141 *N.J.* at 124, 661 A.2d 231.

[*Id.* at 243–45, 870 A.2d 294 (footnote omitted).]

The Supreme Court concluded that, in holding that the Attorney General is required to provide representation to a State employee only if there is "no realistic possibility" that a judgment against the employee "would warrant a finding that the act upon which liability was based was outside the scope of employment or involved actual fraud, actual malice or willful misconduct[,]" 376 *N.J.Super.* at 242–43, 870 A.2d 294, this court erroneously "created a presumption that the Attorney General owed no duty to defend a State employee." 186 *N.J.* at 425, 895 A.2d 1154. The Court noted that *N.J.S.A.* 59:10A–1 imposes a general duty upon the Attorney General to provide representation to a State employee against whom an action is brought on account of an act or omission in the scope of employment, subject to the three exceptions set forth in *N.J.S.A.* 59:10A–2. *Id.* at 426, 895 A.2d 1154. Consequently, applying the "general principle of statutory interpretation ... that 'exceptions in a legislative enactment are to be strictly but reasonably construed,'" the Court concluded that " 'all

doubt should be resolved in favor of the general provision' contained in *N.J.S.A.* 59:10A–1, which is to afford representation, 'rather than the proviso or exception' contained in *N.J.S.A.* 59:10A–2, which permits the Attorney General to refuse to defend." *Ibid.* (quoting *Serv. Armament Co. v. Hyland,* 70 *N.J.* 550, 558–59, 362 *A.*2d 13 (1976) and *N.J. State Bd. of Optometrists v. S.S. Kresge Co.,* 113 *N.J.L.* 287, 296, 174 *A.* 353 (Sup.Ct.1934), *aff'd as modified,* 115 *N.J.L.* 495, 181 *A.* 152 (E. & A.1935)).

Based on this analysis, the Court held that "the Attorney General must provide a defense to a state employee who requests representation pursuant to *N.J.S.A.* 59:10A–1 unless the Attorney General determines that it is more probable than not that one of the three exceptions set forth in *N.J.S.A.* 59:10A–2 applies." *Id.* at 427, 895 *A.*2d 1154. The Court stated that this "formulation places the appropriate burden on the Attorney General to justify a departure from the general rule of representation." *Ibid.* The Court did not decide whether any of the three exceptions set forth in *N.J.S.A.* 59:10A–2 would apply under the "more probable than not" standard that it found to govern the Attorney General's decision whether to provide representation, but instead remanded the case. The Court also held that the Attorney General's refusal to provide representation to a State employee "is entitled to the usual deference accorded to [a final administrative] decision," and therefore "[a]n appellate court should not reverse the Attorney General's determination unless 'it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole.'" *Ibid.* (quoting *In re Taylor,* 158 *N.J.* 644, 657, 731 *A.*2d 35 (1999)).

The Prado, Valle and Chamberlain actions have been concluded by settlements, and the Attorney General has now assumed responsibility for representing Pappas in the O'Keefe action. Consequently, Pappas does not at this point seek representation by the Attorney General under *N.J.S.A.* 59:10A–1 but instead seeks indemnification under *N.J.S.A.* 59:10–2 for the defense costs he

had to incur as a result of the Attorney General's refusal to provide representation.

Although the grounds for the State denying indemnification under *N.J.S.A.* 59:10-2 "parallel[ ] the first two exceptions to the defense provision, listed in *N.J.S.A.* 59:10A-2," *Chasin, supra,* 159 *N.J.* at 432, 732 *A.*2d 457, the determination whether the State has a duty to indemnify an employee for defense costs may be significantly different in some cases than a determination of the Attorney General's duty under *N.J.S.A.* 59:10A-1 and -2 to provide representation. The Attorney General's representation decision ordinarily should be made shortly after the filing of the complaint, before discovery has begun. See *Prado, supra,* 186 *N.J.* at 423, 895 *A.*2d 1154. Thus, this decision must be based on the allegations of the complaint and such other information about the claim as the Attorney General may be able to obtain from the defendant employee and other State employees. On the other hand, the determination whether the State has a duty under *N.J.S.A.* 59:10-2 to indemnify a State employee for defense costs, after the Attorney General has refused to provide representation, ordinarily will not be made until after the case has been concluded. At that stage of the case, the State generally will have the benefit of a more complete and accurate picture of the facts than at the beginning of the case because discovery will have been conducted, and in those cases that are tried, the jury will have rendered a verdict or a judge will have made findings of fact that may be relevant to the determination whether the employee's alleged act or omission was outside the scope of employment or constituted actual fraud, willful misconduct or actual malice.

In this case, however, there is no indication that discovery elicited any additional information regarding the Attorney General's representation obligation that was unavailable at the outset of the case, and none of the actions against Pappas were tried. Therefore, the parties agree that the Attorney General's representation obligation under *N.J.S.A.* 59:10A-1 and -2, and now the State's indemnification obligation under *N.J.S.A.* 59:10-2, must be

determined on the basis of the Commissioner of Labor's findings regarding the June 7, 2001 staff meeting that are summarized in the previously quoted portion of the Supreme Court's opinion. 186 *N.J.* at 416–17, 895 *A.2d* 1154. Furthermore, under *N.J.S.A.* 59:10–2, Pappas has the burden to show that "the act . . . upon which the claim[s]" against him were based "occurred within the scope of employment," and if he makes this showing, the State must indemnify him unless it can "establish that he acted . . . because of . . . willful misconduct."

■ We concluded in our original opinion that even reviewing the Attorney General's denial of representation to Pappas under the highly restrictive standard subsequently held to be erroneous by the Supreme Court—that representation must be provided to a State employee "only if there is no realistic possibility that any judgment against the employee would warrant a finding that the act upon which liability was based was outside the scope of employment or involved actual fraud, actual malice, or willful misconduct," 376 *N.J.Super.* at 242–43, 870 *A.2d* 294—there was no basis for concluding that Pappas's use of offensive language at the Office of Wage and Hour Compliance staff meeting was outside the scope of his employment or constituted willful misconduct. Therefore, it follows a fortiori for the reasons stated in that opinion that, under the standards that govern an application for indemnification of defense costs under *N.J.S.A.* 59:10–2, Pappas has established that his presentation at the staff meeting was within the scope of his employment and the State has failed to establish that his comments at the meeting constituted an act of willful misconduct. However, the Attorney General's decision reaffirming her predecessor's refusal to provide representation to Pappas warrants brief supplemental comment.

■ In concluding that Pappas' presentation at the Office of Wage and Hour Compliance staff meeting was not within the scope of his employment, the Attorney General stated that Pappas was "neither authorized to make derogatory ethnic slurs during that meeting nor furthering the purposes of the Department of

Labor when making those remarks." She also observed that the "Statewide Policy Against Discrimination . . . specifically instructed" Pappas "not to make such remarks in the workplace." However, the fact that a State employee performed his or her duties in a manner that was not authorized by his superiors or that was explicitly or implicitly prohibited by administrative directive does not mean that the employee acted outside the scope of employment and therefore is not entitled to representation or indemnification for any claim that may be brought based on the performance of those duties. The State does not authorize and indeed implicitly prohibits its employees from driving negligently or in violation of motor vehicle laws in the course of their employment, but this does not mean that such motor vehicle operation is outside the scope of employment. The State also does not authorize its law enforcement officers to violate a suspect's constitutional rights in conducting a search or making an arrest, but this does not mean that any such violation is outside the scope of the officer's employment. Indeed, absent an allegation that a State employee has performed his or her duties in a wrongful manner, there would be no basis for a claim under the Tort Claims Act, the LAD or 42 *U.S.C.A.* § 1983 and thus no need for the employee to request representation or indemnification under the Tort Claims Act.

Furthermore, the fact that the State has conducted an internal investigation of the employee's alleged conduct and concluded that it was improper does not deprive the employee of the right to representation or indemnification because these rights extend to both unfounded and well-founded claims against State employees. Thus, even when liability under the Tort Claims Act is found and a judgment is entered against a State employee, *N.J.S.A.* 59:10–1 and –2 entitle the employee to indemnification unless a statutory ground for denial is established.

The breadth of these representation and indemnification rights is illustrated by *Wright v. State,* 169 *N.J.* 422, 778 *A.*2d 443 (2001), which involved claims by an alleged drug dealer for false arrest,

invasion of privacy, malicious prosecution, false imprisonment and other causes of action against various defendants, including thirteen employees of the Somerset County Prosecutor's Office. Before the Court addressed the representation and indemnification issue, all of the drug dealer's convictions had been reversed after a hearing on a petition for post-conviction relief in which the trial court found that the prosecutor's office had conducted an illegal search and then concealed evidence of both the illegal search and the terms of a favorable plea agreement with a co-defendant who testified at trial. *Id.* at 431, 778 *A.*2d 443. Although the Attorney General declined to provide representation to the County Prosecutor's employees on the ground that they were not State employees, *id.* at 432, 778 *A.*2d 443, a position that the Court later rejected, *id.* at 449–56, 778 *A.*2d 443, the Court had no hesitancy concluding, indeed the issue was apparently uncontested, that "the acts of the county prosecutors and their subordinates were committed within the scope of [their] employment," *id.* at 444, 778 *A.*2d 443.[3]

Consequently, there is no inconsistency in determining, either as in *Wright* by judicial findings or as in this case by internal investigation, that a State employee's conduct was improper and also concluding that the conduct occurred within the scope of employment. Indeed, where, as in this case, the improper conduct consists of offensive speech, the fact that it occurred in the course of employment may be the foundation for the public employer's conclusion that it warrants disciplinary action and the plaintiffs' claim that it is actionable.

Finally, the Attorney General asserts that there is "a presumption against representation" of a State employee if "an internal agency investigation" results in a finding of a violation of the State Policy Prohibiting Discrimination, Harassment or Hostile Environ-

---

[3] In addition, the Court noted that "the State does not allege that any of the three exceptions [provided by *N.J.S.A.* 59:10A–2 to the Attorney General's duty of representation] apply." *Ibid.*

ment in the Workplace. In support of this assertion, the Attorney General relies upon a September 20, 1996 memorandum from former Attorney General Verniero to members of the Governor's cabinet, entitled "Proposed Policy Regarding Representation of State Employees Found To Have Committed Discrimination In the Workplace." However, this memorandum expressly states that "it only applies in those cases where there has been a finding of *affirmative* discriminatory or harassing conduct, such as inappropriate touching, racial slurs or the like." The Commissioner of Labor did not make a finding of such "affirmative discriminatory or harassing conduct" in this case. He only found that Pappas had used ethnically and sexually offensive language at a meeting, not that he had directed ethnic or sexual slurs at subordinates.

In any event, the former Attorney General's reliance upon a presumption against representation of a State employee is inconsistent with the Supreme Court's rejection of any presumption against representation or indemnification. *Prado, supra,* 186 *N.J.* at 425, 895 *A.*2d 1154. Instead, under the Supreme Court opinion, the burden is upon the Attorney General "to justify a departure from the general rule of representation[,]" which requires a finding of the applicability of one of the exceptions set forth in *N.J.S.A.* 59:10A–2 and *N.J.S.A.* 59:10–2 to the obligation to provide representation and indemnification to State employees for claims based on acts or omissions in the course of their employment. *Id.* at 427, 895 *A.*2d 1154. For the reasons previously expressed, there is no basis in this case for the Attorney General to conclude that Pappas' presentation at the Office of Wage and Hour Compliance staff meeting was outside the scope of his employment or that his offensive comments at the meeting constituted willful misconduct.

Accordingly, the Attorney General's decision denying Pappas indemnification for his defense costs is reversed. The case is remanded to the Attorney General to enable Pappas to apply for such indemnification in accordance with *N.J.S.A.* 59:10–2. Any dispute concerning the reasonable amount of such costs incurred

in the appellate proceedings should be presented on motion to this court. Any dispute concerning the reasonable costs incurred in proceedings before the Law Division should be presented on motion to that court.